**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Kenneth E. HARBOUR and James G. Blank, Defendants-Appellants.**

Nos. 85–3109, 85–3175.

United States Court of Appeals, Seventh Circuit.

Argued June 4, 1986.

Decided Jan. 12, 1987.

As Amended Jan. 13, 1987.

Steven C. Mills, Bruce Locher, Springfield, for defendants-appellants.

Sandra Young, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., U.S. Atty.'s Office, Springfield, for plaintiff-appellee.

Before WOOD and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

After a jury trial, the defendant Kenneth E. Harbour was convicted of two counts and the defendant James G. Blank of one count of theft of United States Government property in violation of 18 U.S.C. § 641. Harbour was sentenced to one year of imprisonment to be followed by five years of probation, and was ordered to pay a fine of $1,000 plus $1,000 in restitution to the United States Government. Blank received a six month sentence of imprisonment to be followed by five years of probation and ordered to pay $350 in restitution to the United States Government. Harbour appeals his conviction alleging the improper admission of evidence and both defendants appeal their sentences. We affirm.

I

Defendants Kenneth E. Harbour and James G. Blank, during the latter part of 1984 and the first part of 1985, worked as volunteers at a distribution center operated on a monthly basis by the Catholic Charities of Springfield, Illinois. The purpose of the distribution center was to give federal surplus dairy food commodities, consisting of blocks of cheese and packages of butter, to the needy as part of the *Temporary Emergency Food Assistance Act of 1983*, Pub.L. No. 98–8, Title II, §§ 201 to 210, 97 Stat. 13, 35–36 (1984).[1] The commodities were distributed from a semi-trailer at the distribution center on the basis of need. Charles Boston, an internal security investigator for the Illinois Department of Public Aid testified that on the morning of December 15, 1984, he and agents of the United States Secret Service and Illinois

---

1. The *Temporary Emergency Food Assistance Act of 1983* provides that the surplus commodities belonging to the Commodity Credit Corporation were to be transferred to various state agencies and private relief organizations for distribution to the nation's poor.

Department of Public Aid observed and photographed the defendants taking boxes from the truck loaded with federal food commodities and placing them in the back of Harbour's personal vehicle, a Ford Bronco. Boston also testified that Stanley Jones, a paid employee of the Catholic Charities, and the two defendants were observed as they appeared to be looking into Harbour's vehicle. Timothy Wessing, who operated a motorcycle shop in Springfield during the relevant time period, (December 1984), testified at trial that on the afternoon of December 15, 1984, he purchased two cases of cheddar cheese, two cases of processed cheese and one and one half cases of butter from Jones and Harbour.

Agent Boston testified that on January 26, 1985, he, along with other agents from both the Federal Bureau of Investigation and the Illinois Department of Public Aid not only observed but photographed the defendants, Blank and Harbour, and Jones taking boxes from the semi-trailer at the distribution center and placing them in Harbour's vehicle. The same day Harbour and Blank were observed transferring three boxes from Harbour's vehicle as well as currency with an individual in downtown Springfield.

The defendants were both indicted on May 10, 1985, for two counts of felony theft of government property in violation of 18 U.S.C. § 641. Count one related to the events of December 15, 1984, and Count two related to the events of January 26, 1985. At the defendants' trial, Jones[2] testified that each time the defendants assisted at the distribution center they had stolen cheese and/or butter from the semi-trailer. Jones further testified that on December 14, 1984, the day before the December distribution date for which the defendants were accused of stealing United States Government property, he observed Harbour take five cases of cheese from the distribution center, load them in his vehicle, and drive off.

Harbour chose to testify in his defense. On direct examination when his attorney asked him if he had ever sold commodities, he responded "No, I have not." On cross-examination over an objection that it was outside the scope of cross-examination, the trial judge allowed the government to question him about events of January 26, 1985.

The defendant Harbour was convicted on both counts and the defendant Blank was convicted on the second count of the indictment. Three issues are raised for our consideration on appeal: (1) Defendant Harbour alleges the trial court erred in allowing Jones to testify that the defendants had previously taken federal commodities before the two dates (December 15, 1984, and January 26, 1985) as recited in the indictment; (2) Defendant Harbour also appeals that the trial court erred in allowing the government to cross-examine him regarding the events of January 26, 1985; (3) both defendants question the trial court's sentencing them for violations of 18 U.S.C. § 641.

## II

Defendant Harbour argues that the trial court abused its discretion in permitting Stanley Jones to testify that every time the defendants helped distribute commodities as volunteers they took cheese and butter and loaded it into Harbour's personal vehicle. Harbour asserts that Rules 404(b)[3]

**2.** Jones, pursuant to a grant of immunity, testified and admitted that he committed perjury before the grand jury that had indicted the defendants. On direct examination, Jones testified that he had lied to the grand jury when he denied being present when Wessing purchased the cheese from Harbour on December 15, 1984.

**3.** 404(b) of the Federal Rules of Evidence provides:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

and 403[4] of the Federal Rules of Evidence should be read to preclude the testimony as to his alleged prior bad acts. Harbour further asserts that the testimony of Stanley Jones regarding Harbour's prior misconduct was uncorroborated and vague, thus not "clear and convincing." He also emphasizes that Jones perjured himself, hence his testimony is unbelievable.[5]

"A district court has broad authority to control the admission of evidence ... that will not be disturbed on appeal unless an abuse of discretion is shown." *United States v. Rovetuso*, 768 F.2d 809, 815 (7th Cir.1985), *cert. denied sub nom. Williams v. United States*, —— U.S. ——, 106 S.Ct. 1951, 90 L.Ed.2d 360 (1986) (citations omitted). In analyzing whether the trial court abused its discretion in admitting evidence of Harbour's prior misconduct, we must decide if the evidence of Harbour's prior misconduct was directed towards establishing a matter in issue other than his propensity to commit the crimes charged. Thus, the evidence of Harbour's prior misconduct was properly admitted if it was offered for some purpose other than to demonstrate that Harbour had previously engaged in illegal conduct and thus was more likely to have committed the crime charged. In *United States v. Shackleford*, 738 F.2d 776 (7th Cir.1984) this Court set forth a four-part test for the admissibility of evidence of prior misconduct:

> "Our decisions indicate that, under the dictates of Rules 404(b) and 403, admission of evidence of prior or subsequent acts will be approved if (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time

to be relevant to the matter in issue ..., (3) the evidence is clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."

738 F.2d at 779 (citation omitted). In determining whether the requirements of 404(b) and 403 of the Federal Rules of Evidence are satisfied in the instant case, we must apply the four-prong *Shackleford* test.

In regards to the first prong, the theft of United States Government property is a crime that requires proof that the defendant possessed the specific intent to deprive the United States Government of the property taken. *See Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In the present case, the prosecution introduced evidence of Harbour's prior misconduct in an attempt to establish that he specifically intended to deprive the Government of the dairy products he was observed and photographed taking on the dates alleged in the indictment. Jones testified that each time Harbour assisted at the distribution center he had taken cheese and/or butter from the semi-trailer. We have stated that the prosecution "may submit evidence of other acts in an attempt to establish the matter in its case-in-chief, assuming the other requirements of Rules 404(b) and 403 [of the Federal Rules of Evidence] are satisfied." *United States v. Shackleford*, 738 F.2d at 781. Jones' testimony regarding Harbour's prior takings from the distribution center was used to show Harbour's criminal intent, not that Harbour had a propensity to commit a crime.

The second prong of the *Shackleford* test mandates that the prior misconduct be similar enough and close enough in time to be relevant to the matter in issue. Jones

---

**4.** Rule 403 of the Federal Rules of Evidence provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**5.** In examining whether the trial court properly admitted Jones' testimony as to Harbour's bad acts, we are mindful that assessing the credibility of witnesses is the responsibility of the jury. A reviewing court will not assess the credibility of the witnesses. *United States v. Wilson*, 715 F.2d 1164, 1173 (7th Cir.), *cert. denied sub nom. Williams v. United States*, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983).

testified to previous acts by the defendant that were not only similar to the ones for which he was charged but were *identical.* In addition, the acts Jones testified to took place in late 1984, thus they were without doubt "close enough in time to be relevant" to the alleged thefts of December 15, 1984 and January 26, 1985. Thus, the second prong of the *Shackleford* test is met.

Harbour essentially argues that the testimony offered by Jones was not credible since Jones had been impeached and his testimony was uncorroborated, thus it was not "clear and convincing" under the third prong of the *Shackleford* test. However, Jones was not impeached concerning his testimony on the issue of the defendant's prior conduct. Matters of credibility are in the purview of the jury. In the instant case, they obviously chose to believe Jones rather than Harbour. Although Jones' testimony relating to Harbour's prior thefts was uncorroborated, there was sufficient corroboration of other aspects of his testimony. Jones testified on direct examination that the defendants had previously taken commodities from the semi-trailer. This court has stated that "Direct testimony of the defendants' participation in a prior crime ... is ordinarily held to satisfy the clear and convincing standard." *United States v. Dolliole,* 597 F.2d 102, 107 (7th Cir.), *cert. denied* 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318 (1979).

The last prong of the four part *Shackleford* test requires us to decide whether the probative value of Jones' testimony as to the prior misconduct was substantially outweighed by the danger of unfair prejudice.[6] We agree with the Government's argument that Jones' testimony concerning Harbour's prior thefts had a meaningful evidentiary value on the issue of criminal intent but an insignificant, if any, prejudicial

effect until the jury actually concluded that Harbour took the commodities with such intent. After reviewing and weighing the testimony and the caselaw applicable thereto, we hold that the district court did not abuse its discretion in admitting Jones' testimony regarding Harbour's prior misconduct.

### III

Harbour argues that the district court abused its discretion under Rule 611(b) of the Federal Rules of Evidence [7] in allowing the government to cross-examine him about events on January 26, 1985, even though he did not testify on direct examination about events on that date. A trial court has broad authority and the responsibility to control the scope and extent of cross-examination. *See, e.g., United States v. Rovetuso,* 768 F.2d 809, 815 (7th Cir. 1985). In *Neely v. Israel,* 715 F.2d 1261 (7th Cir.1983), *cert. denied* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), this Court stated:

"It is clear that a defendant who takes the stand waives his privilege against self-incrimination on matters reasonably related to the subject matter of his direct examination ... The rationale is that a witness who foregoes his right not to testify cannot then claim that he is immune from cross-examination on the matters that he has chosen to put in dispute through his direct testimony."

715 F.2d at 1263–1264 (citations omitted). In determining what constitutes matters reasonably related to the subject matter of direct examination "[b]oth the United States Supreme Court and our court have liberally interpreted the extent of the defendant's direct examination for purposes of establishing the proper scope of the

---

**6.** The Advisory Committee Notes to Rule 403 state: " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

**7.** Rule 611(b) of the Federal Rules of Evidence provides:

(b) Scope of cross-examination. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

cross-examination." *United States v. Green,* 757 F.2d 116, 120 (7th Cir.1985).

On direct examination, when asked by his attorney whether he had ever sold commodities, Harbour responded: "No, I have not." This outright denial on direct examination of ever having sold federal commodities coupled with his testimony on direct as to the events of December 15, 1984, opened himself up for cross-examination on the events of January 26, 1985, as well as any other events related to his selling of federal commodities. The government's questioning as to the events of January 26, 1985, was without doubt reasonably related to the subject matter of Harbour's testimony. Since Harbour himself, through his own attorney, chose to place the issue in dispute on direct with an outright denial of having ever sold commodities, the trial court properly allowed the government to cross-examine him regarding the events of the day in question as well as any conduct related to the sale of commodities. We hold that the district court action in allowing the government to cross-examine Harbour on the events of January 26, 1985, was proper and there was no abuse of discretion.

## IV

Both defendants appeal their sentence pursuant to 18 U.S.C. § 641. Harbour was sentenced to one year imprisonment to be followed by five years of probation, and ordered to pay a fine of $1,000 plus $1,000 in restitution to the United States Government. Blank was sentenced to six months in jail to be followed by five years of probation, and was ordered to pay $350 restitution to the United States Government. Both defendants contend that since the property they were accused of taking belonged to the Commodity Credit Corporation, they should have been sentenced under the misdemeanor provisions of the *Commodity Credit Corporation Charter Act,* 15 U.S.C. § 714m(c), rather than either 18 U.S.C. § 641, or the *Temporary Emergency Food Assistance Act of 1983* (which adopted the penalty provision of the *Agriculture and Consumer Protection Act of 1973,* Pub.L. No. 93–86, § 4(c), 87 Stat. 249, as amended by the *Agriculture and Food Act of 1981,* Pub. L. No. 97–98, Title XIII, § 1334(2), 95 Stat. 1292–93 (1982), found at 7 U.S.C. § 612c notes).

Section 641 of Title 18 under which the defendants were convicted and sentenced provides that one convicted:

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more one year; or both.

Section 612c notes of Title 7 provides:

(c) Whoever embezzles willfully misapplies, steals or obtains by fraud any agricultural commodity or its products (or any funds, assets, or property deriving from donation of such commodities) provided under this section, or under section 416 of the Agricultural Act of 1949 (7 U.S.C. 1431), section 32 of the Act of August 24, 1935 (7 U.S.C. 612c), section 709 of the Food and Agriculture Act of 1965 (7 U.S.C. 1446a–1) Temporary or the Emergency Food Assistance Act of 1983 [Pub.L. 98–8, Title II, §§ 201 to 210, Mar. 24, 1983, 97 Stat. 35, set out as a note under this section], whether received directly or indirectly from the United States Department of Agriculture, or whoever receives, conceals, or retains such commodities, products, funds, assets or property for personal use or gain, knowing such commodities, products, funds, assets or property have been embezzled, willfully misapplied, stolen, or obtained by fraud shall, if such commodities, products, funds, assets or property are of a value of $100 or more, be fined not more than $10,000 or imprisoned not more than five years, or both, or if such commodities, products, funds, assets, or property are of value of less than $100, shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

Section 714m(c) of Title 15 under which the defendants would prefer to be sentenced provides:

> (c) Whoever shall willfully steal, conceal, remove, dispose of, or convert to his own use or to that of another any property owned or held by, or mortgaged or pledged to, the [Commodity Credit] Corporation, or any property mortgaged or pledged as security for any promissory note, or other evidence of indebtedness, which the Corporation has guaranteed or is obligated to purchase upon tender, shall, upon conviction thereof, if such property be of an amount of value in excess of $500, be punished by a fine of not more than $10,000 or by imprisonment for not more than five years, or both, and, if such property be of an amount or value of $500 or less, be punished by a fine of not more than $1,000 or by imprisonment for not more than one year, or both.

The defendants filed separate briefs but basically raise the same arguments.[8] The defendants initially claim that the provisions of 15 U.S.C. § 714m(e) prohibit the imposition of the sentence pursuant to 18 U.S.C. § 641 when the commodities are owned by the Commodity Credit Corporation directing our attention to language in the *Commodity Credit Corporation Charter Act* that states:

> (e) All of the general penal statutes relating to the crimes and offenses against the United States shall apply with respect to the Corporation, its property, money, contracts and agreements, employees, and operations: *Provided*, That such general penal statutes shall not apply to the extent that they relate to crimes and offenses punishable under subsections (a) and (d) of this section ...

15 U.S.C. § 714m(e). The defendants claim that the *Commodity Credit Corporation Charter Act* has an exclusivity provision, and since the property belonged to the Commodity Credit Corporation, they should be sentenced under that act.

In connection with their argument that they should be sentenced under the *Commodity Credit Corporation Charter Act*, the defendants contend that the value of the property they were convicted of stealing, selling and converting to their own use was never ascertained. The indictment charged that on one occasion in December, 1984, and on another occasion in January, 1985, the defendants stole and converted to their own use United States property, "namely federal surplus food commodities", having a value of more than $100 in violation of 18 U.S.C. § 641. The jury found that Harbour was guilty beyond a reasonable doubt of committing the offenses charged on each occasion; Blank was found guilty by the jury beyond a reasonable doubt of having committed the offense charged on January 26, 1985. In order to convict the defendants, the jury must have concluded that the commodities stolen were valued at more than $100.[9] The jury's finding would satisfy the penalty provisions of 18 U.S.C. 641 and 7 U.S.C. 612c but not the felony provision of 15 U.S.C. § 714m(c) since no finding was made by the jury that the value of the stolen commodities exceeded $500. The defendants assert that ambiguities in criminal statutes must be resolved in favor of lenity citing *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

The defendants argue that this court's decision in *United States v. Ray*, 514 F.2d 418 (7th Cir.), *cert. denied* 423 U.S. 892, 96

---

8. Blank only appealed the sentence he was given; his brief was therefore limited to that issue.

9. In its denial of Harbour's motion challenging his sentence, the district court noted a slight difference existed between the *Temporary Emergency Food Assistance Act of 1983* and 18 U.S.C. § 641:

> "The Agriculture Act [which provides the penalty provisions for the *Temporary Emergency*

> *Food Assistance Act of 1983* ] reserves its harsher penalty for thefts of items with a 'value of $100 or more,' whereas the Theft Statute [18 U.S.C. § 641] distinguishes only those thefts in which the property *exceeds* $100."

*United States v. Harbour*, No. 85–30048, Mem.Op. at 3 (C.D.Ill. Dec. 16, 1985) (emphasis in original).

S.Ct. 189, 46 L.Ed.2d 123 (1975) controls. Ray held that the receipt and retention of stolen property belonging to the Commodity Credit Corporation constituted willful conversion punishable under 15 U.S.C. § 714m(c) and not an offense under 18 U.S.C. § 641, the statute referred to in the indictment and under which defendants were sentenced.

In denying Harbour's post-trial motion challenging his sentence, the trial court held that the defendants were properly sentenced under 18 U.S.C. § 641 finding that the *Commodity Credit Corporation Charter Act* was partially preempted by the *Temporary Emergency Food Assistance Act of 1983*. The trial court ruled that it was within the prosecutor's discretion to bring charges under 18 U.S.C. 641 or the *Temporary Emergency Food Assistance Act of 1983*, since there was no exclusivity provision in the *Temporary Emergency Food Assistance Act of 1983* like there was in 15 U.S.C. 714m(e). The trial court concluded "The statute selected was within the U.S. Attorney's discretion, and the sentence was within the ambit of the statute selected" and refused to re-sentence the defendants. *United States v. Harbour*, No. 85–30048, Mem.Op. at 8 (C.D.Ill. Dec. 16, 1985).

In analyzing this issue we are mindful of our prior decision in *United States v. Gannon*, 684 F.2d 433 (7th Cir.), *cert. denied*, 454 U.S. 940, 102 S.Ct. 475, 70 L.Ed.2d 248 (1981) in which we stated that:

> "Although it is true that, in general, a criminal statute must be strictly construed ... it is also a well established rule of statutory construction that a court will presume against interpreting a statute in a way that will render it meaningless or ineffective."

684 F.2d at 437 (citations omitted).

The trial court stated "Because the CCC Act [*Commodity Credit Corporation Charter Act*] applies exclusively if it applies at all, the Court is constrained to find that the Agriculture and Assistance Acts preempted a portion of the CCC Act in order to give effect to both legislative enactments." *United States v. Harbour*, No. 85–30048, Mem.Op. at 7 (C.D.Ill. Dec. 16, 1985). We agree that if the *Commodity Credit Corporation Charter Act* was to apply to the present case, it would apply exclusively. But if we were to hold that the *Commodity Credit Corporation Charter Act* was applicable here it would render the *Temporary Emergency Food Assistance Act of 1983* and its penalty provision meaningless. The Supreme Court has stated that a statute should be construed to avoid absurd results and inconsistency with the statute's legislative purpose. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). The trial court's finding as to the applicability of the *Commodity Credit Corporation Charter Act* is correct: The *Commodity Credit Corporation Charter Act's* penalty provision only applies to situations not covered by the *Temporary Emergency Food Assistance Act of 1983*.

It is clear that Congress in passing the *Temporary Emergency Food Assistance Act of 1983* (with its adoption of the penalty provisions of the *Agriculture and Consumer Protection Act of 1973*) sought to establish punishment for thefts of surplus food from commodity distribution programs. Whereas the *Commodity Credit Corporation Charter Act* has an exclusivity provision regarding punishment, the *Temporary Emergency Food Assistance Act of 1983* does not. Since Congress has not established an exclusivity provision, we refuse to impose one. Thus, the prosecution had a choice of prosecuting under either of two acts: 18 U.S.C. § 641 or the *Temporary Emergency Food Assistance Act of 1983* and its accompanying penalty provision found in 7 U.S.C. § 612c notes. The Supreme Court in *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) stated:

> "This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not

discriminate against any class of defendants ... Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."

442 U.S. at 123–124, 99 S.Ct. at 2203–2204 (citations omitted).

The prosecutor was within his discretion to choose 18 U.S.C. § 641 as the statute under which to bring an indictment. The jury found both defendants guilty of theft of government property and the trial court sentenced them pursuant to 18 U.S.C. § 641. Harbour was sentenced to one year of imprisonment to be followed by five years probation, and was ordered to pay a fine of $1,000 plus $1,000 in restitution to the United States Government. Blank received a six month sentence of imprisonment to be followed by five years of probation and ordered to pay $350 in restitution to the United States Government.

The Supreme Court in *U.S. v. Batchelder*, stated "Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced." 442 U.S. at 125, 99 S.Ct. at 2205. The defendants were properly indicted and prosecuted under 18 U.S.C. § 641. We have established that 18 U.S.C. § 641 was a penalty scheme under which the defendants could be sentenced. The defendants' argument that they should have been sentenced under 15 U.S.C. § 714m(c) is rejected. We hold the trial court's decision to sentence the defendants under 18 U.S.C. § 641 was proper.

## V

We affirm Harbour's conviction of both counts of theft of United States Government property in violation of 18 U.S.C. § 641. We also affirm the trial court's sentencing of Harbour and Blank pursuant to 18 U.S.C. § 641. Affirmed.