**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mark S. ELY, Defendant–Appellant.**

**No. 89–1393.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1989.

Decided Aug. 17, 1990.

---

Eric J. Klumb, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Bruce J. Rosen, Fritschler, Pellino, Rosen & Mowris, Madison, Wis., for defendant-appellant.

Before POSNER, COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The July 1988 Grand Jury returned a three-count indictment against defendant Mark Ely. Count One charged Ely with conspiring to distribute cocaine (in violation of 21 U.S.C. §§ 841(a)(1) and 846) by regularly receiving cocaine from James Brill for distribution to others. Counts Two and Three charged Ely with committing perjury (in violation of 18 U.S.C. § 1623) when he testified before a grand jury on May 14, 1985. Specifically, Count Two alleged that Ely lied when he told the grand jury he never bought cocaine from Brill; Count Three alleged that Ely lied when he told the grand jury he never sold Brill a white Corvette in exchange for cocaine.

Prior to trial, Ely made a motion to sever the perjury counts from the drug conspiracy count pursuant to Rule 14 of the Federal Rules of Criminal Procedure.[1] Rule 14 states that "[i]f it appears that a defendant ... is prejudiced by a joinder of offenses ... in an indictment or information or by such joinder for trial together, the court may order ... separate trials of counts ... or provide whatever other relief justice requires." Ely submitted an *in camera* affidavit arguing that severance was necessary in order to assure him a fair trial. Ely claimed that he had important testimony to give in defense of the perjury charges; thus, he was willing to waive his fifth amendment right to silence in a perjury trial. At the same time, Ely argued that

---

1. Ely did not contend that joinder of the counts was inappropriate under Rule 8(a) of the Federal Rules of Criminal Procedure. That Rule states that, "[t]wo or more offenses may be charged in the same indictment ... if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

it was imperative for him not to take the witness stand during a trial on the drug conspiracy charge.

■ Ely's severance motion was submitted to a magistrate who determined whether or not to grant the motion under the two-part test devised in *Baker v. United States*, 401 F.2d 958 (D.C.Cir.1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970) and later adopted by this court in *United States v. Archer*, 843 F.2d 1019 (7th Cir.), *cert. denied*, 488 U.S. 837, 109 S.Ct. 100, 102 L.Ed.2d 76 (1988). Under that test, severance is required when a defendant demonstrates that he has both (1) important testimony to give concerning some counts and (2) a strong need to refrain from testifying with regard to other counts. *Archer*, 843 F.2d at 1022; *Baker*, 401 F.2d at 977. The magistrate concluded that Ely had important testimony to give concerning the perjury counts. Specifically, Ely wanted to testify that he was never placed under oath when he testified before the grand jury in May of 1985. Ely was the only witness who claimed to have personal knowledge of whether or not the oath was administered. While the grand jury foreman, the court reporter and an Assistant United States Attorney all testified that it was the customary practice to swear all witnesses before the grand jury, none could distinctly remember whether Ely had in fact been sworn on May 14, 1985. Because Ely was the only witness with personal knowledge and because failure to administer the oath would be a complete defense to the perjury charges, the magistrate concluded that Ely met the first prong of the two-part *Baker* test. The district court agreed with this conclusion.

Nonetheless, as the magistrate recommended, the district court denied the severance motion on the ground that Ely failed to satisfy the second part of the *Baker* test. The magistrate reasoned that Ely did not demonstrate a strong need to remain silent on the drug conspiracy count. The district court agreed, concluding that Ely would not suffer prejudice with regard to the drug conspiracy charge if he testified

in a trial in which all three counts were joined. However, the court invited Ely to renew his motion at trial, when the court was in a better position to determine whether Ely would suffer prejudice.

At trial, Ely testified as the only defense witness. On direct examination, Ely admitted that he knowingly lied before the grand jury on May 14, 1985, but claimed that he was never put under oath. On cross-examination, Ely repeatedly invoked the fifth amendment in response to questions about the drug conspiracy—questions that Ely maintains were beyond the scope of direct examination. After the government's cross-examination, Ely renewed his motion for severance; in the alternative, he asked for a mistrial. The district court adhered to its prior ruling and denied both motions. The jury convicted Ely of both the drug conspiracy count and the perjury counts. The court sentenced Ely to eight years for the drug conspiracy count and four years for each of the perjury counts. The perjury sentences were imposed concurrent with each other but consecutive to the drug conspiracy sentence.

Ely concedes that he received a fair trial on the two perjury counts, and thus, does not challenge the perjury convictions on appeal. Ely challenges only his drug conspiracy conviction, advancing two grounds for reversal. First, Ely contends that the district court erred in allowing the government to ask cross-examination questions pertaining to the drug conspiracy. Second, Ely claims that if the questions pertaining to the drug conspiracy were proper, then the district court erred in declining to sever the drug conspiracy count from the perjury counts. We will address each challenge in turn.

On direct examination, Ely testified that he knowingly lied to IRS Special Agent Tom Larson when Larson interviewed him in March of 1985. Ely also testified that he knowingly and intentionally lied to the grand jury on May 14, 1985. Finally, Ely testified that no one placed him under oath before he testified to the grand jury and that he specifically pointed this out to the

Assistant United States Attorney at the grand jury hearing.

The government began its cross-examination by asking Ely why he lied to the grand jury. Ely objected to this question on relevancy grounds; his objection was overruled. In response to the question, Ely pleaded the fifth amendment. Over Ely's continuing objection, the government asked him whether he lied to the grand jury because he thought he could go to jail; whether he lied to Agent Larson because he thought he could go to jail; whether he was a drug customer of Jim Brill; whether he sold cocaine he purchased from Brill to others and, if he admitted this to the grand jury, whether he believed he would go to jail. Ely pleaded the fifth amendment in response to each of these questions.

The government also read the following grand jury transcript to Ely and asked Ely if he knew he made false statements when he was asked and answered:

Q. Have you ever sold anything to Jim Brill?

A. No, I haven't.

Q. Have you ever bought anything from him?

A. No, I haven't.

Q. Did he ever sell cocaine to you?

A. No.

Ely pleaded the fifth in response to this question. In addition, the government asked Ely whether he knowingly gave false answers when he was asked and answered:

Q. When did you purchase this white Corvette?

A. Five years ago.

. . . .

Q. And you sold it to Joe Brill (Jim Brill's brother), right?

A. Right.

. . . .

Q. And how much did Joe Brill pay for it?

A. Five hundred bucks.

Again, Ely took the fifth.

Finally, the government asked Ely whether he was the "Mark" or the "M.E." on drug ledgers recovered from Jim Brill's garbage; whether he would plead the fifth amendment to all questions about his cocaine dealings with Brill; and whether he would plead the fifth to all questions relating to his drug activities in 1983, 1984, and 1985. Again, Ely pleaded the fifth amendment in response to each of these questions.

The district court believed that the government's questions were a proper extension of Ely's direct examination. Accordingly, the court instructed the jury that it could consider Ely's failure to deny or explain acts of an incriminating nature in reaching a decision on "guilt or innocence." Ely argues that the government's cross-examination went beyond the scope of his direct examination because he did not dispute matters pertaining to the drug conspiracy on direct. Ely also objects to the district court's instruction—because the cross-examination went beyond the scope of direct, the jury should not have been allowed to hear or consider Ely's fifth amendment pleas in determining guilt or innocence.

A defendant who takes the stand waives his privilege against self-incrimination on matters "reasonably related" to the subject matter of his direct examination. *McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 1471, 28 L.Ed.2d 711 (1971); *Brown v. United States,* 356 U.S. 148, 155–56, 78 S.Ct. 622, 627, 2 L.Ed.2d 589 (1958). When a witness forgoes his right not to testify, he cannot then claim to be immune from cross-examination on matters he has chosen to put in dispute through his direct testimony. *Id.* In *United States v. Kimberlin,* 805 F.2d 210, 236–37 (7th Cir.1986), *cert. denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987) and *Neely v. Israel,* 715 F.2d 1261, 1265 (7th Cir.1983), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), we held that it is proper for a district court to allow a jury to hear a defendant plead the fifth amendment if the plea is in response to cross-examination questions that are "reasonably related" to the subject matter of direct.

◼ The government claims that all of its questions on cross-examination were

"reasonably related" to Ely's questions on direct. Thus, relying on *Kimberlin* and *Neely*, the government argues that the jury was entitled to hear Ely invoke the fifth amendment. First, the government argues that it was entitled to ask Ely whether he lied to the grand jury when he denied purchasing cocaine from Brill and when he claimed to have sold the Corvette for cash. The government argues that these questions were proper because the perjury counts charged Ely with lying about these specific matters, not just lying in general. We agree. On direct, Ely admitted that he "lied" to the grand jury; he did not identify the questions he lied to. The two perjury counts did not merely charge Ely with lying to the grand jury, however; they charged Ely with lying to two specific lines of questioning—(1) Ely lied when he denied purchasing cocaine from Jim Brill (Count Two) and (2) Ely lied when he denied selling Jim Brill a white Corvette in exchange for cocaine (Count Three). On cross, the government asked Ely whether he lied to the specific questions charged in the indictment. These questions were "reasonably related" to the matter Ely disputed on direct—namely, his guilt on the perjury counts.

The remainder of the government's questions related (for the most part) to Ely's motivation for lying to the grand jury. These questions present a closer call since "motivation for lying" is not an element of perjury—the government need only show that Ely knowingly and intentionally lied under oath. The government contends that Ely's motivation for lying to the grand jury was relevant to Ely's credibility at trial, particularly the credibility of his testimony about the oath issue. The government argues that if it could demonstrate that Ely lied to the grand jury because he was afraid of going to jail, this would tend to show that Ely lies as a matter of self-preservation—when he fears he could go to jail, he lies, which is what he was doing with regard to the issue of whether the oath

was administered. We agree. The questions pertaining to Ely's motivation for lying were relevant to Ely's truthfulness on the oath issue; this, in turn, was "reasonably related" to Ely's guilt on the perjury counts—the issue Ely disputed on direct.

Thus, under *Kimberlin* and *Neely*, the government's cross-examination was proper because it was "reasonably related" to Ely's direct. Our analysis does not end here, however. Determining whether the cross-examination was proper is not equivalent to determining whether the district court properly denied Ely's severance motion. *Kimberlin* and *Neely* merely illustrate why the jury in this case was entitled to hear Ely invoke the fifth amendment (and draw inferences therefrom) in deciding Ely's guilt or innocence on the *perjury charges*—this is not to say the same jury was entitled to determine whether Ely was guilty of the drug conspiracy charge.[2] Therefore, we must now determine whether the district court properly denied Ely's severance motion in light of the fact that the government was entitled to ask Ely questions pertaining to the drug conspiracy.

We have previously recognized that severance is not mandatory every time a defendant wishes to testify to one charge and remain silent about another. If that were the law, a court would be divested of all control over the matter of severance and the choice would be entrusted to the defendant. *United States v. Peters*, 791 F.2d 1270, 1287 (7th Cir.), *cert. denied*, 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986). On appeal, we will reverse a district court's ruling regarding a severance motion only if the court abused its discretion. *United States v. Hogan*, 886 F.2d 1497, 1506 (7th Cir.1989); *Archer*, 843 F.2d at 1021. For reversal, a defendant must show that he suffered substantial actual prejudice rising to the level of an unfair trial because of the court's refusal to sever. *Willard v. Pearson*, 823 F.2d 1141, 1149 (7th Cir.1987);

---

**2.** Neither *Kimberlin* nor *Neely* dealt with severance of counts under Rule 14. Rather, both cases involved defendants who refused to testify on cross about events pertaining to the count of indictment they disputed on direct. *See Kimberlin*, 805 F.2d at 236–37; *Neely*, 715 F.2d at 1263–64.

*Peters,* 791 F.2d at 1287; *United States v. Percival,* 756 F.2d 600, 610 (7th Cir.1985).

Ely contends that the district court's refusal to severe denied him a fair trial on the drug conspiracy count. He argues that the government's cross-examination unfairly prejudiced him because he was repeatedly forced to invoke the fifth amendment in response to questions about the drug conspiracy. In response, the government argues that our decision in *United States v. Archer* demonstrates that Ely did not satisfy the second part of the *Baker* severance test—he did not demonstrate a strong need to refrain from testifying about the drug conspiracy count.[3] In *Archer,* the defendant wanted one prison escape count (Count Two) severed from another prison escape count (Count One) because he wanted to testify about the latter count (Count One) but not the former (Count Two). The defendant claimed that the government could convict him of Count Two only if he testified about Count One. 843 F.2d at 1021–22. We held that the district court properly declined to sever Count Two from Count One because the government offered sufficient and, in fact, overwhelming evidence to convict the defendant of Count Two whether or not the defendant testified about Count One. *Id.* at 1022–23.

■ The government contends that the district court's refusal to sever did not deprive Ely of a fair trial because here, as in *Archer,* the government presented sufficient evidence to convict Ely of the drug conspiracy charge whether or not Ely took the stand.[4] We agree. In sum, the evidence against Ely was as follows: Kim Geier, a government witness, testified that in 1981 she began purchasing cocaine from Ely. Geier continued to purchase cocaine from Ely into 1984. Russell Buckner, the government's main witness and a former drug courier for Jim Brill, testified that Jim Brill was Ely's source of cocaine. Buckner testified that Ely purchased approximately two kilograms of cocaine from Brill each month. Buckner also testified about one occasion in February of 1985 in which he and Brill collected $7,500 from Ely for drug purchases. Other witnesses testified that Brill had told them he purchased a white Corvette from Ely for two ounces of cocaine. Ely lied to IRS Agent Tom Larson about the sale of the Corvette, telling Larson that he did not sell the car to Jim Brill. Ely later lied to the grand jury about the Corvette, telling them that he sold the Corvette to Jim Brill's brother, Joe Brill, in exchange for cash. Searches of Jim Brill's garbage from about December, 1983, through July, 1984, revealed drug ledgers with regular entries under the name "Mark," "Ely" or "M.E." Finally, telephone records indicate that there were approximately 370 long-distance calls between the telephone numbers of Jim Brill and Ely from June of 1983 through September of 1985.

Ely's fifth amendment pleas were unquestionably probative of his guilt or innocence on the drug conspiracy charge. If the jury would have acquitted Ely of the drug conspiracy charge but for his fifth amendment pleas, Ely would have been de-

---

**3.** The government concedes that Ely satisfied the first part of the *Baker* test—Ely did have important testimony to give concerning the perjury counts.

**4.** In *Archer,* as here, the government's cross-examination was "reasonably related" to the defendant's testimony on direct. The defendant in *Archer* wanted to testify about a count alleging that he possessed a diagram, a board (to be used as a ladder), and a homemade screwdriver with the intent to escape from prison (Count One). The defendant had given an incriminating statement to a prison official admitting his intent to use these objects to escape. At trial, the defendant testified that the prison official coerced his confession by threatening to transfer him to a penitentiary and that he actually never intended to use these objects to escape. 843 F.2d at 1021.

Count Two charged the defendant with possessing a homemade handcuff key with the intent to facilitate an escape. *Id.* The defendant's testimony about Count One opened the door to cross-examination questions about Count Two. By testifying that his confession to Count One was false, the defendant invited the inference that he was not a person who would attempt to escape from prison and that he was being set up by prison officials. Questions about Count Two were relevant to (1) the defendant's credibility regarding the claim of a false confession to Count One and (2) the defendant's intent, plan, motive, and preparation to carry out the escape alleged in Count One.

nied a fair trial under *Archer*. Given the extensive evidence of Ely's involvement in the drug conspiracy, however, we can say with confidence that the jury would have convicted Ely of the drug conspiracy count whether or not they heard Ely plead the fifth. Ely's pleas merely amounted to evidence in excess of the required proof beyond a reasonable doubt—accordingly, they did not unfairly prejudice Ely under the test set forth in *Archer*.[5]

For the foregoing reasons, Ely's drug conspiracy conviction is AFFIRMED.

---

**5.** In some of our precedents dealing with severance of counts under Rule 14, we have held that denial of severance did not cause the defendant actual prejudice because most of the evidence supporting one count would have been admissible in a separate trial on the other count. *See e.g., United States v. Hogan*, 886 F.2d 1497, 1506 (7th Cir.1989); *United States v. L'Allier*, 838 F.2d 234, 241 (7th Cir.1988); *Holmes v. Gray*, 526 F.2d 622, 623 (7th Cir.1975), *cert. denied*, 434 U.S. 907, 98 S.Ct. 308, 54 L.Ed.2d 194 (1977). That analysis is not applicable here. Presumptively, Ely would not take the stand in a separate trial on the drug conspiracy count; thus, his fifth amendment pleas in this trial would not have been admissible in a new trial on the drug conspiracy.