**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-4471

ISRAEL CRUZ, a/k/a Chino,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 98-4485

RANDY LEE WOODHOUSE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                      No. 98-4500
DENNIS ELIJAH JEMISON, a/k/a D.J.,
a/k/a Larry R. Mathis,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                      No. 98-4519
ALONZO MATIN WILSON, JR., a/k/a
June,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4758

CARLO GARRETTE MALONE, a/k/a
Pokie,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CR-97-117)

Argued: October 27, 1999

Decided: January 27, 2000

Before WILKINSON, Chief Judge, and WILKINS and
MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jesse Edgar Demps, Portsmouth, Virginia, for Appellant
Cruz; John Michael Babineau, DOYLE & BABINEAU, P.L.L.C.,
Norfolk, Virginia, for Appellant Malone; Christopher Ford Cowan,
COWAN & NORTH, L.L.P., Richmond, Virginia, for Appellant
Jemison; Robert Edward Frank, Norfolk, Virginia, for Appellant
Woodhouse; Jennifer Tope Stanton, J.T. STANTON, P.C., Norfolk,
Virginia, for Appellant Wilson. Janet S. Reincke, Assistant United
States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Helen
F. Fahey, United States Attorney, Norfolk, Virginia, for Appellee.

_____

2

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Carlo Garrette Malone, Randy Lee Woodhouse, Dennis Elijah Jemison, Alonzo Matin Wilson, Jr., and Israel Cruz for conspiracy to distribute heroine and cocaine in violation of 21 U.S.C. § 846. The jury also convicted Malone of operating a continuing criminal enterprise, see 21 U.S.C. § 848, for his role in running a drug trafficking organization. The district court sentenced Malone to 420 months, Woodhouse to 310 months, Jemison to 200 months, Wilson to 155 months, and Cruz to 250 months. The defendants appeal their convictions and sentences on several grounds, and we affirm.

I.

From 1992 to 1997 Malone led a major cocaine and heroin drug ring centered in Norfolk, Virginia. Woodhouse, Jemison, and others worked for Malone; they helped him transport, process, and sell drugs. By 1997 Cruz led a cocaine and heroin distribution ring that was actively conspiring with Malone's organization; Cruz employed Wilson and others to ship cocaine and heroin from Florida and New York to Malone in Virginia. The conspiracy formed from Malone and Cruz's organizations placed thousands of packets of heroin and cocaine into the hands of drug users.

Malone employed Jemison and Woodhouse to help him process and sell drugs in and around Norfolk, Virginia. On Malone's behalf, Jemison prepared thousands of individual-sized packets of drugs and sold them to street dealers. Jemison also accompanied Malone at large-volume drug transactions. Woodhouse did much the same for Malone. Woodhouse, too, cut and bagged drugs and then sold the pre-pared product for retail distribution. Malone himself was heavily involved in preparing the drugs for sale. For example, Carnale James, another Malone employee, testified that he helped Malone prepare

3

thousands of individual packets of heroin several times a week between 1992 and 1995.

Malone made significant leadership decisions during the life of the conspiracy. He arranged for Woodhouse to process and sell drugs from a particular apartment. Malone recruited people to sell drugs on his behalf in Grandy Park, a neighborhood in Norfolk. He once arranged for someone else to rent a car and then used it to drive to New York to buy $24,000 of heroin. He handled and controlled much of the conspiracy's money. He made direct sales of large quantities of drugs to street dealers who later sold the drugs to individual users. Malone fronted drugs for sale in Grandy Park, and the cash proceeds were delivered directly to him.

Cruz controlled a cocaine and heroin distribution ring that participated with Malone's organization in bringing drugs into Norfolk. Specifically, in 1997 Cruz assumed control of a drug distribution operation that had been run by Milton Romero. Before he became the leader, Cruz had worked with Romero. Alonzo Wilson, Leon Garcia, Antonio Jaramillo, Winston Greene, Erik Santos, and Barry Rahman worked with Romero and Cruz. Romero and (later) Cruz repeatedly shipped large quantities of drugs to Malone. These shipments were sent through Garcia, Jaramillo, Santos, and Rahman.

Cruz, like Malone, exercised considerable control over the drug distribution system. Cruz used Greene to distribute literally thousands of individual packets of heroin. At Cruz's direction, Santos packaged drugs, and Santos and Rahman delivered them. Cruz's home was a virtual drug factory: a search turned up the full line of equipment used for processing and dealing drugs, including scales, cutting agents, glassine bags, and handguns.

An informant captured Malone on tape discussing drug debts that Romero owed him, the possibility of future drug sales, and his (Malone's) knowledge of Wilson's drug sales. A search of Malone's grandmother's house turned up Malone's fingerprints on bags used to package drugs for retail sale, 13.4 grams of heroin, scales, and firearms. Finally, Malone was arrested in 1995 with 166.4 grams of heroin and $3,700 dollars in cash.

4

Malone, Cruz, and their associates were prone to violence. Jaramillo was murdered during the course of the conspiracy. He was killed over drug debts generated by the trafficking between the Cruz and Malone segments of the conspiracy. Every defendant except Wilson was linked to firearms. Malone, Woodhouse, and Jemison carried a gun, and guns were found in Cruz's home.

II.

A.

Malone, Woodhouse, Jemison, Wilson, and Cruz contend that there was insufficient evidence to support their drug conspiracy convictions. Specifically, they argue that the government failed to prove that they all belonged to the same conspiracy. We conclude, however, that the evidence was sufficient to convict all five defendants of participation in a single conspiracy.

To prove a single conspiracy, the government had to show an agreement among the defendants to undertake illegal drug trafficking and each defendant's willful joinder in that agreement. Proof of a single conspiracy may be shown by circumstantial evidence. United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996). There was evidence that the five defendants were involved in one overall conspiracy to supply the Norfolk area with illegal drugs. The conspiracy had two wings to be sure, one led by Malone and one led by Cruz (and earlier by Romero). Woodhouse and Jemison worked directly for Malone, and Wilson worked directly for Cruz. There was considerable communication and dealing between the two wings of the conspiracy. These dealings culminated periodically when Cruz supplied Malone with wholesale quantities of drugs. This evidence, taken in the light most favorable to the government, is sufficient to support the jury's finding of one drug trafficking conspiracy. See Glasser v. United States, 315 U.S. 60, 79-80 (1942).

B.

Malone contends that there was insufficient evidence to convict him of running a continuing criminal enterprise (CCE). On a CCE

5

charge the government must prove that: (1) the defendant committed a felony violation of the federal drug laws; (2) the violation was part of a continuing series of violations of the drug laws; (3) the series of violations were undertaken by the defendant in concert with five or more persons; (4) the defendant served as an organizer, supervisor, or in some other management capacity with respect to these persons; and (5) the defendant derived substantial income or resources from the continuing series of violations. See United States v. Ricks, 882 F.2d 885, 890-91 (4th Cir. 1989). Malone claims that the evidence was insufficient on elements three, four, and five.

With respect to element three, direct testimony from former Malone lieutenants shows that Malone had at least five people actively distributing drugs at his command. With respect to element four, there is considerable evidence that Malone was in a top leadership position. He superintended the acquisition of (wholesale) drug supplies and repeatedly gave others, such as Jemison and Woodhouse, directions on when and where to distribute the drugs on the retail side. Last, as to element five, there was evidence that Malone handled tens of thousands, if not hundreds of thousands of dollars, of illegal drug money. The jury was therefore able to conclude that Malone derived substantial income from the continuing series of drug violations. All in all, there was sufficient evidence to support the jury's verdict that Malone was operating a CCE.

C.

Jemison contends the district court committed reversible error when it allowed a defense witness to identify him on cross-examination. Another defendant, Wilson, called A.L. Pittman, a Norfolk police officer who worked in Grandy Park between 1995 and 1997. (Grandy Park was one of the areas in Norfolk where the drug conspiracy operated.) On direct examination Pittman described how he policed the Grandy Park neighborhood and how he became familiar with the residents and those who visited there. Pittman could not identify Wilson or place him in Grandy Park. On cross-examination a government lawyer (over objection) asked Officer Pittman if there was anyone in the courtroom whom he had seen visiting in Grandy Park. Pittman identified Jemison. Jemison contends that the question was improper because it went beyond the scope of direct examination.

See Fed. R. Evid. 611(b); United States v. Harbour 809 F.2d 384, 387-88 (7th Cir. 1987). Even if the question was improper, it was harmless error for the district court to allow it to be answered. See United States v. Johnson, 71 F.3d 139, 146 (4th Cir. 1995). There was a great deal of direct evidence that Jemison was one of Malone's key operatives. The jury would not have been unduly swayed by Officer Pittman's simple identification of Jemison as a visitor to Grandy Park.

D.

Woodhouse, Jemison, Wilson, and Cruz contest the drug weights attributed to them at sentencing. In making its findings on drug weights, the district court relied on trial evidence, information from the presentence reports, and the direct testimony of several witnesses at the sentencing hearing. The district court's findings were not clearly erroneous. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989).

E.

Malone, Woodhouse, Jemison, and Cruz contest the district court's enhancement of their sentences, but their arguments are without merit. Malone, Woodhouse, Jemison, and Cruz argue that the district court erred in enhancing their sentences under U.S.S.G. § 2D1.1(b)(1) for the possession of firearms during the course of the conspiracy. One of Malone's buyers testified that Malone had a gun every time he (the buyer) bought heroin from Malone. A witness testified that Woodhouse carried a gun in 1991 and 1992 and at times kept a gun on the table along with his heroin supply. Two witnesses testified that Jemison kept guns at hand as he engaged in drug trafficking. When Cruz's house was searched, two guns and drug paraphernalia were found in his master bedroom. Based on this evidence, the firearms enhancement was appropriate.

Cruz argues separately that there was insufficient evidence to support the district court's two-level enhancement of his sentence for being an "organizer, leader, manager, or supervisor" in the conspiracy. See U.S.S.G. § 3B1.1(c). Santos testified that on a regular basis he packaged heroin for Cruz, delivered it to buyers, and collected the money and returned it to Cruz. Rahman testified that on two occa-

7

sions at Cruz's direction he stashed heroin in rental vans that were used to make deliveries. This evidence was sufficient to support an enhancement for a leadership role.

III.

The convictions and sentences of Carlo Garrette Malone, Randy Lee Woodhouse, Dennis Elijah Jemison, Alonzo Matin Wilson, Jr., and Israel Cruz are affirmed.

AFFIRMED

8