**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wiley F. GREEN, Defendant-Appellant.**

No. 84–1075.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1984.

Decided Feb. 4, 1985.

David J. Ryan, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

John F. Ittenbach, Cottrell, Ittenbach, Helbert & Sheeks, Indianapolis, Ind., for defendant-appellant.

Before ESCHBACH and COFFEY, Circuit Judges, and GRANT, Senior District Judge.*

COFFEY, Circuit Judge.

The defendant, Wiley F. Green, appeals his conviction in the United States District Court for the Southern District of Indiana for three counts of failure to file an income tax return in violation of Title 26 U.S.C. § 7203.[1] For the calendar years 1976, 1977, and 1978, the defendant was sentenced to one year of incarceration with six months of the sentence suspended. We affirm.

### I.

The facts of this case are undisputed. The appellant, Wiley F. Green, is a dentist who resides in Zionsville, Indiana. He and his wife filed joint tax returns for the years 1972 through 1974. He testified that based upon his experiences while serving in the Army, together with the information he received while attending various seminars regarding a citizen's constitutional rights, he began to question the government's constitutional authority to tax. Thus, beginning in the year 1975 Green requested that his employer, the University of Indiana, withhold no taxes from his paycheck since he contended he had incurred no federal income tax liability for the taxable year of 1974.[2]

Between 1976 and 1978, the appellant filed various protest documents in place of or in connection with his tax return.[3] Warning letters were sent to the defendant by the Internal Revenue Service (IRS) for each year that the defendant filed an improper return. Following his third year of filing deficient returns, IRS Special Agents contacted the appellant regarding his tax return deficiencies. He then filed amended returns for each of the three years inscribing on each line the statement "object self-incrimination." Based on his continued failure to file proper tax returns, the defendant was indicted, tried and convicted for failure to file a proper return in violation of Title 26 U.S.C. § 7203 for the years 1976 through 1978.

Green appeals this conviction alleging that the government failed to sufficiently identify him as the defendant at trial. He also asserts that the district court abused its discretion in allowing evidence to be received at trial detailing his income and in allowing him to be cross-examined on certain tax computations. Next, he contends that the district court submitted several erroneous jury instructions concerning the sufficiency of the information to be dis-

---

* The Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. 26 U.S.C. § 7203 states:

 "Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of § 6015 or § 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than one year, or both, together with the costs of prosecution."

 This section was amended in 1982 by Pub.L. 97–248 to increase the maximum penalty to $25,000 ($100,000 for a corporation) and to disallow an action under this section if one who fails to pay an estimated tax is not liable for any further tax under § 6654 or § 6655. Neither of these amendments affect the outcome of this appeal.

2. If a person did not incur any income tax liability for the previous year, he may claim this as an exemption from withholding in the following year. The evidence, however, revealed that Green did in fact incur a federal income tax liability of $2,114.67 for 1974.

3. In the 1975 protest document he stated that he had received only 740 constitutional dollars of silver and/or gold (the requirement for filing at the time was $750.00). In his 1976 protest document he stated "I am not able to get an accurate account of a number of leeches living off of me and I wish to make no false statements so 5th Amend." For his 1978 return, the defendant wrote "object self-incrimination" on each line of his return.

closed on his tax returns and the nature of his Fifth Amendment good faith defense.

## II.

### A. Identification of the defendant.

The appellant initially contends that the district court improperly denied the defendant's motion to dismiss based upon the government's failure to properly identify the individual in the courtroom as the defendant, Wiley F. Green. We hold that the appellant's argument is without merit.

■■■ This court, in *United States v. Weed*, 689 F.2d 752 (7th Cir.1982), held that while "an in-court identification of the accused is an essential element in the establishment of guilt beyond a reasonable doubt.... identification can be inferred from all the facts and circumstances that are in evidence." *Id.* at 754. In this case, at the close of the government's case-in-chief, the district court had before it various stipulations entered into between the parties at the beginning of trial that had been signed by the defendant, Wiley F. Green. When the government offered these stipulations into evidence, the only objections raised by Green were to their materiality and relevance. In fact, Green's counsel at trial stated that he objected "since we have offered to stipulate that *the defendant in this case* has earned sufficient income...." Similarly, the defense counsel failed to object properly to the prosecution's reference to the "defendant" throughout its case-in-chief and since there was only one defendant in this case there was no opportunity for confusion or mistake. *Id.* at 756. Thus, the district court did not act improperly in denying the defendant's motion to dismiss for failure to properly identify the defendant during the government's case-in-chief. It should be noted that the district court allowed the government to reopen its case-in-chief and present an IRS agent who specifically identified the defendant as Wiley F. Green. Green contends that the district court abused its discretion in allowing the government to reopen its case in order that they might identify him as the defendant.

However, the district court is invested with broad, discretionary powers in allowing a party to reopen its case. *See, e.g., United States v. Papia,* 560 F.2d 827, 849 (7th Cir.1977). "The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities inherent in the adversary process.... The judge's control over the proceedings must necessarily be substantial.... In the final analysis, the admissibility and the scope of examination of witnesses must be determined by the trial court in the exercise of its discretion...." *Caruth v. Pinkney,* 683 F.2d 1044, 1051 (7th Cir.1982). We disagree with Green that the district court judge abused his discretion in allowing the government to reopen its case in order to present the IRS agents who could specifically identify Green as the defendant. Certainly, this evidence was relevant and did not prejudice Green in any manner. Further, the jury could very logically infer his identity as that of the defendant from all of the testimony and exhibits presented during the government's case. Thus, the added specific identification of Green as the defendant after the reopening of the government's case was, at best, cumulative evidence of his identity.

### B. Evidentiary matters.

■ The defendant next argues that the district court committed prejudicial error when it allowed the government to introduce the amount of the defendant's income during the years in question into evidence since the defendant was willing to stipulate that he had made enough income during these years to be required to file a return. The district court allowed not only the introduction of the amount of the defendant's income into evidence, but also allowed evidence concerning its source, reason for receipt, and time of receipt. Clearly, all of this information was introduced and properly received into evidence as it related to the issue of the defendant's intent or "willfulness" in failing to file a return, a fact that the defendant was obviously not will-

ing to stipulate. The evidence as to the income's source, reasons for receipt, etc., was particularly relevant since the defendant based his defense upon his good faith belief in claiming the Fifth Amendment right against self-incrimination on his tax return. The evidence as to the amount of income derived from the various sources and the time that those amounts were received was also relevant as it related to the defendant's Fifth Amendment good faith defense since it detailed the percentage of the defendant's income from its various sources from wages, dividends, and interest for the tax years in question.[4] Further, on many of the documents introduced into evidence, such as Green's canceled checks, he often stamped the back with a notation protesting the constitutionality of Federal Reserve Notes. Certainly, this evidence was relevant in assessing his intent in failing to file his tax returns. *See United States v. Moore*, 627 F.2d 830, 832, 833 n. 1 (7th Cir.1980) (This notation on the back of the checks was relevant since Green deposited the amount of money reflected on the check into his account at the bank and, thus, the evidence tended to undercut his own assertion that he believed those dollars to be worthless).

The defendant also contends that he was compelled to testify on cross-examination against his will concerning the computation of his tax liability for the years in question. The appellant is correct in his assertion that every citizen of the United States must be guaranteed a free choice to admit, deny, or refuse to answer any questions, except that once he takes the stand to testify this privilege against self-incrimi-

nation is lost for purposes of cross-examination as to matters reasonably related to his direct examination. *Brown v. United States*, 356 U.S. 148, 155–56, 78 S.Ct. 622, 626–27, 2 L.Ed.2d 589 (1958); *Neely v. Israel*, 715 F.2d 1261, 1264 (7th Cir.1983). ("The rationale is that a witness who foregoes his right not to testify cannot then claim that he is immune from cross-examination on matters that he has chosen to put in dispute through his direct testimony." *Id.*) When determining the "relation to the subject matter of one's direct examination" both the United States Supreme Court and our court have liberally interpreted the extent of the defendant's direct examination for purposes of establishing the proper scope of the cross-examination. *See Neely*, 715 F.2d at 1264, interpreting *United States v. Havens*, 446 U.S. 620, 628, 100 S.Ct. 1912, 1917, 64 L.Ed.2d 559 (1980); *see also United States ex rel. Doss v. Brewer*, 685 F.2d 1003, 1013 (7th Cir.1982).

The defendant in this case testified on direct examination that he compared the possible penalties for failure to file against his possible tax liability. He explained that since the possible penalties were much greater than the tax liability incurred if he did file a legitimate return, he must have sincerely believed in his cause since he was willing to accept those penalties by not filing a return. He was then asked to disclose how he computed his liability and the basis for those computations for the years in question.[5] Green objected to the inquiry concerning the basis for his computation and claimed his Fifth Amendment privilege; but, the district

4. But whether or not the amount of income was relevant, its admission did not unduly prejudice the defendant's case. The evidence concerning the amount of the defendant's income ranged from approximately $15,000 in 1976 to $21,000 in 1978. The defendant apparently argues that the amounts were introduced in an attempt to unduly sway the jury with the argument that the defendant had gotten away with not paying his fair share of the tax burden that all of us bear. We fail to understand how these amounts would inflame the jury that the defendant had somehow circumvented the system as to not pay his fair share.

5. In this case the district court judge asked Green to disclose the information. The defendant does not argue on appeal that it was improper for the district court judge to ask him to disclose this information. However, if he did raise this argument we would hold that this questioning was not improper. It is acceptable for a district court judge to question a witness as long as he does not "communicate a belief in the defendant's guilt to the jury." *United States v. Moore*, 627 F.2d 830, 832 (7th Cir.1980). In this case the judge's questions were directed to give the jury more information by which to assess the defendant's good faith claim.

court ordered him to answer. It is clear, based upon the rule regarding the scope of the cross-examination as set forth in *Brown, Havens,* and *Neely, supra,* that it was not an abuse of discretion for the court to require Green to disclose the basis for his tax computation during the years in question since he was responsible for raising the issue of his tax computation during his direct examination.

### C. Improper Jury Instructions.

The district court instructed the jury that if a tax return does not contain any information relating to a taxpayer's income from which .a tax may be computed, it cannot be classified as a return within the meaning of the Internal Revenue Code. This instruction was derived from the decision in *United States v. Porth,* 426 F.2d 519, 523 (10th Cir.), *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970) ("A taxpayer's return which does not contain any information relating to the taxpayer's income from which the tax can be computed is not a return within the meaning of the Internal Revenue Code ..."). The defendant now raises on appeal an issue he failed to raise before the trial court, namely, that this instruction "destroyed the credibility of [his] testimony at trial in regard to [his] defense of a good faith misunderstanding of the law." Appellant's brief at 14. He also renews his argument that *Porth* itself was incorrectly decided, an argument previously presented to the district court.

 Although we are unable to comprehend what Green intends to assert when he argues that this instruction "destroyed [his] credibility ... in regard to [his] defense of a good faith misunderstanding of the law," we hasten to note that because of his failure to object to this instruction on this basis at the district court level, our review is limited to one of plain error under Fed.R.Crim.P. 52(b).[6] However, it obvious-

ly was neither plain error nor error in the first instance for the district court to give this instruction since it was consistent with our decision in *United States v. Verkuilen,* 690 F.2d 648 (7th Cir.1982).

The petitioner apparently assumes that this instruction negates his assertion of his Fifth Amendment good faith defense to a charge of willful failure to file a proper income tax return. However, this jury instruction cannot be read in isolation. *See, e.g., Wilk v. American Med. Ass'n,* 719 F.2d 207, 218–19 (7th Cir.1983). In this case, the jury was initially instructed that there are three elements to the offense of failure to file a proper tax return: (1) the defendant earned more than $750.00 and was required to file a return; (2) the defendant failed to file a return; and (3) the defendant did so willfully. The jury was also instructed that the government must prove all three elements of the crime beyond a reasonable doubt and that the defendant could claim as a defense his Fifth Amendment right against self-incrimination if in fact he had a good faith belief that disclosure of certain information on his tax return may subject him to criminal prosecution. The jury instruction to which the defendant refers does not strip him of his right to assert his good faith Fifth Amendment self-incrimination defense since the jury instruction relates only to the failure to file, and not the element of intent. As stated by this court in *Verkuilen,* 690 F.2d at 654, a case very similar to the one before us in that the defendant also typed on most of the lines of his tax return the phrase "object: self-incrimination," "A tax form which does not disclose sufficient information from which tax liability can be calculated is not a tax return under the Internal Revenue Code." Further, we stated in *United States v. Moore,* 627 F.2d 830 (7th Cir.1980), that "[t]he determination of what

---

6. Fed.R.Crim.P. 52(b) provides:
 "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
 The Advisory Committee Note interpreting Rule 52(b) provides:

 "Rule 27 of the Rules of the Supreme Court, 28 U.S.C. foll. § 354, provides that errors not specified will be disregarded, 'save as the court, at its option, may notice a plain error not assigned or specified.'"

is an adequate return is a legal question and it was proper for the district court to decide that question." *Id.* at 834. Thus, the jury instruction regarding the adequacy of the information contained in the return was entirely proper.

■ Green also urges us to overrule the line of cases in this circuit following the *Porth* decision since, Green contends, *Porth* was incorrectly decided. He argues that the decisions cited in *Porth* do not support *Porth's* "conclusive" presumption that the failure to include sufficient information within a return does not constitute a proper tax return for purposes of § 7203. This circuit, however, has recognized the underpinnings of the *Porth* decision and has followed its rationale:

> "*Porth* relied in part on earlier Supreme Court cases which considered the definition of a return in another context. These cases indicate that it is not enough for a form to contain some income information; there must also be an honest and reasonable intent to supply the information required by the tax code.... In the tax protester cases, it is obvious that there is no 'honest and genuine' attempt to meet the requirements of the code. In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information."

*Id.* at 835 (citations omitted). In this case, Green fails to make the distinction between the § 7203 crime of failure to file a return, which includes as one of its elements the willful or intentional failure to file, and one

of the § 7203 elements that the government must prove, namely the failure to file the return itself. The jury instruction in this case obviously pertained only to the element of "failure to file." *Porth* accurately states the law and the district court was correct in giving this instruction, as far as delineating the failure to file element of a § 7203 violation.

Finally, the defendant argues that the Fifth Amendment "good faith" defense jury instruction was erroneous since it improperly commented on the evidence; it implied that only persons engaged in criminal activity can take the Fifth Amendment; and was too narrow in scope since it did not include language instructing that the jury could consider the defendant's "honest" belief in the appropriateness of his actions in asserting his Fifth Amendment privilege on his tax return.[7] We reject the defendant's argument and hold that the jury instruction was a proper statement of the law.

■ The instruction given in this case was clear, concise, and consistent with the instruction recently approved by our court in *United States v. Verkuilen,* 690 F.2d 648 (7th Cir.1982) where we stated:

> "An individual who refuses to disclose the amount of his income derived from a legitimate source on the grounds that such disclosure would violate his Fifth Amendment privilege against self-incrimination has improperly invoked and asserted the Fifth Amendment privilege, unless he can show some possibility that such a disclosure may lead to a criminal prosecution.
>
> * * * * * *
>
> "Revelation of income from legitimate activities· in which no criminal activity was involved would not constitute self-incrimination. For instance, legitimate income from business or the profession of dentistry would not come within the Fifth Amendment privilege as asserted by this defendant.
>
> "In other words, a defendant is required to have a good faith belief that revealing his income would, in fact, violate other criminal laws before he could lawfully rely on a Fifth Amendment privilege not to incriminate himself."

---

7. The jury instruction to which the defendant objects is as follows:

 "You are instructed that a taxpayer may not avoid filing a required income tax return by claiming his privilege against self-incrimination unless the taxpayer in good faith believes that if he furnishes this information on his tax return that the revelation of such information would subject him to *possible prosecution* for violation of criminal laws. However, the Fifth Amendment privilege does not give a person the right to withhold the required information on the return concerning items the disclosure of which would not incriminate him.

"An improper invocation of the Fifth Amendment is not an adequate justification for failure to file a tax return." *Id.* at 654. Green, however, characterizes the instruction given in this case as limiting the Fifth Amendment privilege against self-incrimination to criminals only. We agree with the defendant's assertion only insofar as that the Fifth Amendment privilege "serves as a protection to the innocent as well as to the guilty ..." and, thus, protects all citizens. *Ullmann v. United States,* 350 U.S. 422, 427, 76 S.Ct. 497, 501, 100 L.Ed. 511 (1956). Certainly a person does not need to assert the Fifth Amendment privilege if he or she does not fear criminal prosecution for his acts; but if there is a justifiable fear of prosecution, that person may invoke the privilege. *Garner v. United States,* 424 U.S. 648, 650, 96 S.Ct. 1178, 1180, 47 L.Ed.2d 370 (1976). The instruction in this case stated that the person claiming the Fifth Amendment privilege must have a good faith belief in his/her claim, which rests upon a legitimate fear that disclosure could subject that person to possible criminal prosecution. As made clear in *Verkuilen,* it is the defendant's burden to make some "colorable" showing. *Verkuilen,* 690 F.2d at 654. If, as in this case, the return fails to reveal any apparent threat of self-incrimination, it then becomes the defendant's responsibility to " 'show that answers to [the questions] might incriminate him'.... This does not mean that the defendant must confess the crime he has sought to conceal by asserting the privilege. The law does not require him 'to prove guilt to avoid admitting it.' ... But neither does the law permit the defendant to be the final arbiter of his own assertion's validity." *United States v. Neff,* 615 F.2d 1235, 1240 (9th Cir.1980) (citations omitted).[8]

■ The defendant, in the alternative, asserts that the good faith Fifth Amendment privilege instruction in this case was too limited and that the district court erred when it rejected his proposed jury instruction that the jury may consider the defendant's "honest" belief in taking his Fifth Amendment privilege. As it concerns the intent or wilfullness element of a § 7203 violation, Green appears to be arguing that the district court should have defined "willful" using "bad faith" or "bad purpose" terminology. However, we do not agree that the defendant's position is a correct statement of the law. "Willful in the tax crime statutes means a voluntary, intentional violation of a known legal duty.... The Supreme Court has specifically ruled that no additional good faith defense instruction need be given. *United States v. Pomponio,* 429 U.S. [10] at 13, 97 S.Ct. [22] at 24 [50 L.Ed.2d 12 (1976) ]." *Moore,* 627 F.2d at 833 (citations omitted). Thus, since the Supreme Court's decision in *Pomponio* and our decision in *Moore,* the "bad faith" instruction, which the defendant in this case apparently proposes, need not be given by the district court. *See also United States v. Koliboski,* 732 F.2d 1328, 1331 n. 2 (7th Cir.1984). In this case, the district court instructed that before the defendant could be found guilty the government had to prove beyond a reasonable doubt that he had voluntarily and intentionally violated a known legal duty. The district court, in addition to instructing the jury on the interplay of the good faith defense and the Fifth Amendment privilege defense, also instructed that the defendant's conduct was not "willful" if his actions were due to a good faith misunderstanding of the law. These instructions correctly embodied the applicable law when a person is prosecuted for violating § 7203; thus we approve of the jury instruction given by the district court.

■ Here, the government introduced the defendant's tax returns into evidence for the years 1972 through 1974, and also introduced copies of letters from the IRS for the years 1975 through 1978 explaining that his returns failed to meet the legal

---

8. Similar claims made by other defendants have been rejected time and again by the circuit courts. *See, e.g., Steinbrecher v. C.I.R.,* 712 F.2d 195 (5th Cir.1983); *Lukovsky v. C.I.R.,* 692 F.2d 527 (8th Cir.1982).

requirements. Considering that Green never did file proper returns for the years 1975 through 1978, the government more than carried its burden of proof in demonstrating that the defendant voluntarily and intentionally violated a known legal duty even after he had been repeatedly advised. It was then up to the defendant to rebut the government's evidence by demonstrating that he had a legitimate good faith belief that he may have been subject to prosecution if he disclosed the requested tax information. Green, however, failed to present this defense.

■ Finally, the defendant argues that the district court improperly commented on the evidence in its instruction to the jury when the court explained, using the practice of dentistry as an example, that the Fifth Amendment does not apply to income derived from legitimate activities. As made clear by our decision in *Verkuiten,* the income derived from legitimate activities does not constitute a valid ground for asserting the Fifth Amendment right against self-incrimination. By way of illustration, and to ensure that the jury properly considered the evidence in this case, the district court properly instructed the jury that if it found that the defendant earned *legitimate* income from his practice of dentistry, he would not have properly asserted his Fifth Amendment privilege. The district court was correct in instructing the jury in this manner given that invocation of the Fifth Amendment privilege against self-incrimination does not apply to income earned from legitimate activities. Thus, the district court's instruction was proper and did not deprive the defendant of a fair trial.

The decision of the district court is AFFIRMED.