**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert M. WARNER,
Defendant-Appellant.**

**No. 86–2314.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1987.

Decided Sept. 14, 1987.

Robert D. Gaubus, Peoria, Ill., for defendant-appellant.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., and Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before EASTERBROOK and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

Defendant Robert M. Warner appeals from a district court judgment revoking his probation. For the reasons set forth below, that judgment is affirmed.

## I.

In 1981, defendant was convicted after a bench trial of four counts of violating 26 U.S.C. § 7203 by willfully failing to file his federal individual income tax returns for the years 1974, 1975, 1976 and 1977. During that period, defendant owned and operated a gas station in Moline, Illinois. At trial, the government reconstructed defendant's income from those years by painstakingly analyzing defendant's books and records. The evidence established that defendant earned $30,505.93 in 1974, $10,437.47 in 1975, $11,818.40 in 1976, and $7,940.46 in 1977. Having earned those amounts, defendant was required to file. 26 U.S.C. § 6012. But defendant did not file any returns.

The district court sentenced defendant to prison for one year on each of the four counts, with the sentences to run consecutively. The sentencing judge stated that he was putting defendant in prison because he was recalcitrant and would not promise to pay his back and future taxes. On the fourth count, the court suspended the sentence's execution, favoring five years probation. This probationary period was to commence upon his release from prison, but with certain special probation conditions attached. Among the probation conditions were that he file "all required federal and state delinquent tax returns" within the first ninety days of probation and pay court costs of $45 during the first thirty days.

Defendant appealed, and we affirmed his conviction and sentence. *United States v. Warner,* 705 F.2d 463 (7th Cir.) (table decision without published opinion), *cert. denied,* 464 U.S. 862, 104 S.Ct. 190, 78 L.Ed.2d 168 (1983). The district court subsequently reduced defendant's sentence by ordering that the one-year sentences on each of the first three counts run concurrently (with the five-year probationary period remaining as is). The special conditions of probation imposed upon defendant remained essentially the same, except that he was ordered to file all delinquent returns within the first sixty (down from ninety) days of probation and pay the court costs within the first forty-five (up from thirty) days.

Defendant was released from prison and began probation on February 19, 1985. On that day, he met with his probation officer, John Hession. Hession reviewed the special probation conditions with defendant. Defendant then signed a form on which the conditions were listed and was given a copy.

Two days later, defendant decided that the district court's special probation conditions needed refining before he could comply. On February 21, 1985, defendant told Hession that the Internal Revenue Service (IRS) would have to grant him immunity from further prosecution before he would file his delinquent returns. That was a theme to which defendant would return repeatedly over the next fourteen months. Defendant claimed that he could not remember his income and his records were lost while he was in prison. He told anyone who would listen that he was afraid that he would be charged with tax evasion because the only information he could file would be inaccurate. Presumably, defendant was concerned about violating § 7206(1) by subscribing to a false return. Defendant also claimed to be concerned about potential prosecution for late filing, presumably in violation of § 7203. In addition, defendant claimed that he did not know which forms to fill out and was afraid he would be prosecuted for filing the

wrong ones, again presumably in violation of § 7203. To indicate his concern, he wrote to President Reagan (among others) to inquire whether he could be prosecuted. He also asserted to many that the Constitution and the Internal Revenue Code exempted him from paying taxes.

At a meeting on April 3, 1985, Hession suggested to defendant that he contact the IRS to seek their assistance in filing his delinquent returns. Defendant refused to contact the IRS and told his probation officer that he would not do so even if ordered by the court. On April 23, 1985, after the sixty-day period for filing returns had expired, Hession travelled to the defendant's home to discuss defendant's failure to make any progress in meeting his probation conditions. A few weeks later, on May 21, 1985, they met in Hession's office. At that time, defendant told his probation officer that he would not be filing any returns and that he was not able to pay more than $2.00 of the due court costs.

On May 31, 1985, upon the probation officer's petition, the district court issued an order to defendant to show cause why his probation should not be revoked. After the district court issued its order, a full year elapsed before the district court finally conducted a complete revocation hearing. A revocation hearing which began on October 18, 1985 was abruptly halted for reasons which are not important here.

During this period, defendant and Hession continued to meet, but defendant did not take advantage of the time to satisfy his special probation conditions. Defendant through counsel admitted at his revocation hearing that in early 1986 he found records which he believed helpful, but defendant still did not file any returns. And though he had paid only $2.00 out of the assessed court costs, defendant stopped looking for work after the court issued its order to show cause. Defendant reasoned that any job he would find would be interrupted by probation revocation and imprisonment (which seems to us a textbook definition of a self-fulfilling prophecy).

Finally, apparently in response to the district court's suggestion, defendant changed his mind about meeting with the IRS. On April 24, 1986, two IRS agents met with defendant, his lawyer, and his probation officer to assist defendant in filing his returns. Defendant again demanded immunity from further prosecution, to no avail. Defendant now recalls that he asked what forms he should file but that no one would answer. His probation officer does not remember this query. The record does not otherwise indicate what advice the IRS agents offered. Defendant subsequently paid four more dollars towards the court costs but did not file any of the required returns for the years 1974 through 1977.

## II.

The district court conducted a probation revocation hearing on May 30, 1986. By then, more than a year had passed since the deadline for defendant filing his delinquent returns had expired. Nearly a year had passed since the deadline for paying court costs had expired. Defendant had filed a return for 1983 prior to his incarceration but had not filed for any other year between 1974 and 1984. While the special probation conditions required defendant to file all delinquent returns for all of those years—state as well as federal—the district court at the revocation hearing only considered the four returns which formed the basis for defendant's conviction.

At the hearing, appointed counsel represented defendant. Hession testified in detail to the facts just outlined. Defendant expressly waived his right to testify and declined the court's invitation to present evidence and witnesses. Defendant told the court that his probation officer "brought out basically what I would have testified for." Defendant instead tried to persuade the court that he had justifiably violated his probation conditions and should be excused.

Following the hearing, the district court found that a preponderance of the evidence showed that defendant had violated his probation conditions. In particular, the court found that defendant's efforts to file his returns "were either completely frivolous

or completely selfserving." The court did not believe defendant's claim that his records were lost while he was in prison, finding defendant's "credibility on that point to be virtually zero." The court further found that defendant had not tried to discuss with the IRS how much taxes he owed. In this regard, the court noted that the income figures the government reconstructed at trial would have provided defendant with a reasonable start.

The district court revoked defendant's probation. The court subsequently sentenced defendant to the one-year sentence whose execution had been suspended.

Defendant timely filed his notice of appeal. We granted defendant leave to proceed *in forma pauperis* and appointed his counsel below to represent him on appeal.

### III.

Whether to revoke probation is within a district court's discretion. On appeal, we review a decision revoking probation only for abuse of that discretion. *See United States v. Torrez-Flores*, 624 F.2d 776, 780–81 (7th Cir.1980).

■ A district court requires little evidence to find that a probationer has violated his probation conditions. "The court need only be 'reasonably satisfied' and need not find by a preponderance of the evidence that a violation has occurred." *Torrez-Flores*, 624 F.2d at 782, *citing United States v. Smith*, 571 F.2d 370, 372 (7th Cir.1978).

■ Defendant objected below and protests now that the only proof that defendant had failed to file came from his probation officer's hearsay testimony. The court properly overruled defendant's objection. Fed.R.Evid. 1101(d)(3) provides that except for privileges, the Federal Rules of Evidence do not apply to probation revocation proceedings. *See Torrez-Flores*, 624 F.2d. at 780. Hession's testimony that defendant had not filed his returns was demonstrably reliable, and defendant does not challenge its accuracy. Therefore, defendant did not and could not contend below or on appeal that admitting Hession's testimony deprived him of his Sixth Amendment Confrontation Clause rights. *See Egerstaffer v. Israel*, 726 F.2d 1231, 1234–35 (7th Cir.1984). *See also United States v. Bell*, 785 F.2d 640, 643 (8th Cir.1986).

■ The district court went further than necessary when it evaluated the evidence before it under a preponderance-of-the-evidence standard. Even under that higher standard, sufficient evidence exists in the record for a rational fact trier to have found that defendant violated his probation conditions, especially given that defendant did not dispute his probation officer's veracity.

### IV.

Finding that a probationer breached his probation conditions does not end a district court's inquiry. Defendant presented to the district court two related defenses—the Fifth Amendment's privilege against self-incrimination and lack of willfulness. Whether we view these defenses as factual excuses why defendant did not breach his probation conditions or as justifications why he should nonetheless not be recommitted, our analysis is the same (though in another case which characterization is used may affect who bears the burden of proof, an issue not reached by the district court or the parties here). According to defendant, the court abused its discretion when it revoked his probation in the face of these defenses. We find it did not.

■ Defendant contends that the Fifth Amendment's privilege against self-incrimination protected him from filing the returns, even though filing was a condition of probation. Defendant did not claim the privilege on the grounds that any filing's contents would incriminate him by disclosing illegal income sources. *Cf. Minnesota v. Murphy*, 465 U.S. 420, 435 & n. 7, 104 S.Ct. 1136, 1146–47 & n. 7, 79 L.Ed.2d 409 (1984). Rather, defendant invoked the privilege on the grounds that he could be subject to further prosecution if he filed an inaccurate return. Because his income was legitimately earned, defendant did not properly invoke the Fifth Amendment:

An individual who refuses to disclose the amount of his income derived from a legitimate source on the grounds that such disclosure would violate his Fifth Amendment privilege against self-incrimination has improperly invoked and asserted the Fifth Amendment privilege, unless he can show some possibility that such a disclosure may lead to a criminal prosecution.

. . . .

An improper invocation of the Fifth Amendment is not an adequate justification for failure to file a tax return.

*United States v. Verkuilen,* 690 F.2d 648, 654 (7th Cir.1982), *quoted with approval in United States v. Green,* 757 F.2d 116, 122–23 (7th Cir.1985). A taxpayer's fear of prosecution must arise from the return disclosing criminal activities independent of the return filing process itself. Otherwise, every taxpayer could invoke the Fifth Amendment and not file; any breathing person worries about filing a false return.

## V.

█ Defendant next contends that the district court could not reasonably find that his failure to file his returns was willful; to the contrary, urges defendant, his failure to file the returns and satisfy his probation conditions arose from questions about which forms to fill out and his good-faith belief that he could invoke the Fifth Amendment. In addition, defendant contends, as he had at trial, that his records had disappeared, rendering him unable to complete his returns. We reject this contention.

First, there is no intent or fault element required by the probation conditions as imposed by the sentencing court here. Nothing in the conditions can be read as requiring a special mental state before they are breached. While proving willfulness was necessary to obtain defendant's conviction under 26 U.S.C. § 7203, to prove a probation violation the government needed to show only the fact that defendant did not file the returns. Defendant could have challenged the probation conditions on direct appeal, but not now. *See United States v. Weber,* 437 F.2d 1218, 1220 (7th Cir.1971), *cert. denied,* 402 U.S. 1008, 91 S.Ct. 2189, 29 L.Ed.2d 430 (1973); *See also United States v. Irvin,* 820 F.2d 110, 111 (5th Cir.1987); *United States v. Stine,* 646 F.2d 839, 844–45 (3d Cir.1981).

Second, "[f]ederal judicial power to permit probation springs solely from legislative action." *Affronti v. United States,* 350 U.S. 79, 83, 76 S.Ct. 171, 173, 100 L.Ed. 62 (1955). 18 U.S.C. § 3651 (1982 & Supp. III 1985) authorizes probation where it would serve "the ends of justice and the best interest of the public as well as the defendant."[1] Implicitly included in the power to permit probation for these reasons is the power to revoke it for the same reasons, so 18 U.S.C. § 3653 (1982 and Supp. III 1985) authorizes a court to issue an arrest warrant simply for "violation of probation." § 3653's plain language shows that Congress did not require a court to find any particular state of mind before revoking probation.[2]

█ Some federal and state cases suggest that a defendant's probation should not be revoked where his failure to comply was not "willful." *See Bearden v. Georgia,* 461 U.S. 660, 669, n. 10, 103 S.Ct. 2064, 2071, n. 10, 76 L.Ed.2d 221 (1983) (collecting cases); 3 W. LaFave & J. Israel, *Crimi-*

---

1. The Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, 98 Stat. 1987, codified at 18 U.S.C. §§ 3561–66 (Supp. III 1985) (amended in non-relevant part by the Criminal Fine Enforcement Act of 1984, Pub.L. No. 98–596, 98 Stat. 3139 (1984)), repeals § 3651 effective November 1, 1987, see Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985). The Sentencing Reform Act, however, as codified at 18 U.S.C. § 3561–62, provides that in deciding whether to impose probation a court should look at factors—set forth in § 3553(a) (Supp. III 1985)—which, when read together, replicate § 3651's standard. *See* Sen.Rep. No.

98–225, 98th Cong., 2d Sess. 91 (1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3274 (§ 3553(a)'s factors "are set out merely to make more specific the considerations traditionally taken into account by the courts under the broad language of 18 U.S.C. 3651 . . . .").

2. Similarly, the Sentencing Reform Act, *supra* n. 1, which repeals § 3653 effective November 1, 1987, provides in a section codified as 18 U.S.C. § 3565 that probation may be revoked if a defendant "violates a condition of probation."

*nal Procedure* § 25.4(a) (1984) (collecting cases). But "willful" in those cases is used in the limited sense that the probationer's failure was beyond his control and did not implicate the reasons why the sentencing court imposed probation. In *Bearden*, for example, the Court held that an indigent defendant's probation cannot be revoked for failing to pay a fine absent evidence that he was responsible for failing to do so (unless other punishment will not meet the state's interests in punishment and deterrence). To revoke probation then violates "the fundamental fairness" required by the Due Process clauses. *Bearden*, 461 U.S. at 672–73, 103 S.Ct. at 2073. *Cf. Black v. Romano*, 471 U.S. 606, 615, 105 S.Ct. 2254, 2260, 85 L.Ed.2d 636 (1985) ("We need not decide today whether concerns for fundamental fairness would preclude the automatic revocation of probation in circumstances other than those involved in *Bearden*.") Imprisonment, however, may be used as a "sanction to enforce collection" if the probationer is financially able to pay the fine or has not tried vigorously to find a job. *Bearden*, 461 U.S. at 668, 103 S.Ct. at 2070.

■ *Bearden* advances probation's primary purpose, which is " 'to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable.' " *Torrez-Flores*, 624 F.2d at 783, *quoting Burns v. United States*, 287 U.S. 216, 220, 53 S.Ct. 154, 155, 77 L.Ed. 266 (1932) (citation omitted in original). If, however, probation's purposes have been frustrated, revocation is fair and appropriate even if the probationer did not willfully violate his probation conditions. As the Court emphasized in *Bearden:*

We do not suggest that, in other contexts, the probationer's lack of fault in violating a term of probation would necessarily prevent a court from revoking probation. For instance, it may indeed be reckless for a court to permit a person convicted of driving while intoxicated to remain on probation once it becomes evident that efforts at controlling his chronic drunken driving have failed. Ultimately, it must be remembered that the sentence was not imposed for a circumstance beyond the probationer's control "but because he had committed a crime." In contrast to a condition like chronic drunken driving, however, the condition at issue here—indigency—is itself no threat to the safety or welfare of society.

461 U.S. at 668 n. 9, 103 S.Ct. at 2070 n. 9 (citations omitted).

■ Acts for which a defendant may not be criminally culpable—such as violating probation conditions while insane or voluntarily intoxicated—may nonetheless diminish probation's usefulness. See, e.g., *People v. Allegri*, 109 Ill.2d 309, 93 Ill.Dec. 781, 487 N.E.2d 606 (1985); *People v. Cooper*, 146 Ill.App.3d 596, 100 Ill.Dec. 277, 280, 497 N.E.2d 157, 160 (1986). This matter also illustrates why probation's goal of promoting rehabilitation while protecting society is not furthered by requiring willfulness before revoking probation. Defendant showed by failing to file his returns, without more, that he was not a promising candidate for rehabilitation. "A defendant generally may reject probation and elect to have sentence imposed." *United States v. Alexander*, 743 F.2d 472, 479 (7th Cir.1984), *quoting United States v. Mitsubishi Int'l Corp.*, 677 F.2d 785, 788 (9th Cir.1982). The record tells us that this is what defendant effectively did; the sentencing court made filing his returns part of his rehabilitation, and he failed.[3]

While good faith and lack of willfulness does not preclude finding a probation viola-

---

**3.** Because no willful intent is required, the issue defendant raises as to whether his Fifth Amendment claim must be measured objectively or subjectively is a red herring. Were we, however, to graft a "willfulness" requirement onto the probation statutes, this defendant would not be helped. By asking us to overrule *United States v. Moore*, 627 F.2d 830, 833 (7th Cir.1980),

*cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981), defendant recognizes that the definition of "willful" this circuit applies to tax crime statutes would be the logical one to apply here. Under that definition, a subjective but unreasonable belief that the Fifth Amendment may be invoked does not negate the willfulness element found in § 7203 and other tax

tion, defendant could and did raise his alleged good faith before the court as a factor for the court to consider in deciding whether to revoke probation. It is undisputed that defendant had a full opportunity below to present the mitigating factors that he now proffers. A rational fact trier in turn could be reasonably satisfied, as the district court found, that defendant's efforts to file his returns "were either completely frivolous or completely selfserving" and that the defendant did not lose his records while he was in prison.

Losing records in any event does not help a taxpayer, as an intent to evade tax "may be inferred from conduct such as ... destruction of books or records,...." *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). In addition, defendant's trial on the underlying charges not only educated him as to his legal obligations but also reconstructed how much he owed. Therefore, there were no "substantial reasons which justified or mitigated the violation and make revocation inappropriate...." *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 93 S.Ct. 1756, 1764, 36 L.Ed.2d 656 (1973).

### VI.

■ Next, defendant contends that he was improperly punished for failing to pay costs. Pursuant to 28 U.S.C. § 1918, a court may order a convicted defendant to pay the costs incurred by the government in successfully prosecuting a non-capital offense. As discussed above, however, a defendant's probation ordinarily can not be revoked for failing to pay a fine imposed as a probation condition absent evidence that he was responsible. *Bearden*, 461 U.S. at 672, 103 S.Ct. at 2073. While *Bearden* discussed collecting a fine, its reasoning also applies to costs, another form of monetary sanctions. *See Wisconsin v. Glick*, 782 F.2d 670, 673 (7th Cir.1986); *United States v. Hutchings*, 757 F.2d 11, 14 (2d Cir.), *cert. denied*, 472 U.S. 1031, 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985).

Here, defendant was unable to pay costs through his own fault. The district court

crime statutes. *See Verkuilen*, 690 F.2d at 655–56.

found that the defendant, anticipating that he would be returning to jail, did not seek employment after the court issued its order to show cause. The court concluded that "the record clearly establishes here that his nonpayment was wilful and contumacious and he made no good faith effort to obtain employment or to pay the costs." This finding is not clearly erroneous (though this may be too high a standard of proof to apply). Therefore, no *Bearden* infirmity exists. In any event, defendant's failure to file his delinquent returns was reason enough for the district court to impose the previously suspended sentence on the fourth count.

### VII.

■ 18 U.S.C. § 3653 provides that when a probationer violates probation, "the court may revoke the probation and require him to serve the sentence imposed...." Nonetheless, defendant cursorily urges that the court abused its discretion in requiring him to serve his remaining unexecuted one year.

"It is well-settled that the sentencing decision is the unique province of the district court and will not be upset unless it violates applicable statutory limits or the district judge has abused or failed to exercise his sentencing discretion." *United States v. Jones*, 808 F.2d 561, 570 (7th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987). The court properly exercised its discretion in recommitting defendant to his remaining year. Defendant had every imaginable chance to avoid returning to jail. He had fourteen months following his release from prison to file his returns and to pay $45 in court costs. He consciously chose not to. Even now, the record does not indicate that defendant has filed those returns or paid those costs.

For these reasons, the judgment below revoking defendant's probation is

AFFIRMED.