T.C. Memo. 1997-238


UNITED STATES TAX COURT


JOHN WADSWORTH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3259-96.                    Filed May 22, 1997.


<u>David M. Kirsch</u>, for petitioner.

<u>Usha Ravi</u>, for respondent.


MEMORANDUM OPINION


DINAN, <u>Special Trial Judge</u>:   This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and

Procedure.  Respondent determined deficiencies in petitioner's
Federal income taxes and additions to tax as follows:

| Year | Deficiency | Additions to Tax | |
| | | Sec. 6651(a) | Sec. 6654(a) |
| --- | --- | --- | --- |
| 1989 | $7,326 | $1,832 | $496 |
| 1990 | 6,326 | 1,582 | 416 |
| 1991 | 5,097 | 1,274 | 295 |
| 1992 | 4,501 | 1,125 | 193 |

After concessions by respondent,[1] the issues for decision
are:  (1)  Whether petitioner had unreported income for the years
1989, 1990, 1991, and 1992; (2) whether petitioner is liable for
self-employment taxes for the years in issue; (3) whether
petitioner is liable for additions to tax pursuant to section
6651(a)(1) for the years in issue; and (4) whether petitioner is
liable for additions to tax pursuant to section 6654(a) for the
years in issue.

A few of the facts have been stipulated and are so found.
Petitioner resided in Oakview, California, when he filed his
petition.

By letter dated April 1, 1994, Revenue Agent John F. Murphy
informed petitioner that he had been identified as a nonfiling
taxpayer and a participant in an organized movement named the
Pilot Connection.  The last record respondent had of a filed
return from petitioner was for the year 1988.  Petitioner was

---

[1]    Respondent concedes that petitioner's income for the
years in issue, as determined by the Bureau of Labor Statistics
data, should be reduced by the amounts attributed to petitioner
as payments made for Social Security and Federal income taxes.

informed that his 1989 through 1992 tax years were under examination and respondent scheduled a conference with petitioner for April 16, 1994. Petitioner did not attend the April 16, 1994, proposed conference. By letter dated April 18, 1994, John B. Kotmair, Jr., petitioner's then representative,[2] informed respondent's auditing agent that petitioner had given him a power of attorney to represent him. Mr. Kotmair then set forth the conditions under which he and petitioner would meet with the auditing agent. Those conditions were, inter alia, that the auditing agent was to provide Mr. Kotmair:

1. A copy of the guidelines for the meeting;

2. All the specific information and/or documents that are sought;

3. The home address, telephone number, proper name, job title and employee number of John F. Murphy; the District Director; Group Manager; and any other Internal Revenue Service employees connected with this instant action. The authority for this inquiry is found within: U.S. v. Roundtree, 420 F.2d 845; and,

4. Copy of the notification or order, made pursuant to Delegation Order 24 requiring Mr. Wadsworth to keep books and records for submission, upon demand, to the Internal Revenue Service;

5. Copy of the District Office Delegation Order authorizing Mr. Wadsworth's records to be summoned and testimony to be required;

6. The bond number of all agents who will have access to the information they are demanding.

---

[2] John B. Kotmair was convicted of willfully failing to file income tax returns for 1975 and 1976 in violation of section 7203. See Kotmair v. Commissioner, 86 T.C. 1253 (1986).

Upon the receipt of the above information and documents, and a meeting is scheduled, please be advised that we will tape record the meeting and be bringing two witnesses to it.

After receiving Mr. Kotmair's letter dated April 18, 1994, respondent did not further attempt to contact petitioner before issuing her statutory notice of deficiency.

In her notice of deficiency, respondent determined petitioner's income for the years in issue based upon data derived from the Bureau of Labor Statistics (BLS) and respondent's Information Returns Master File (IRMF).

By notice dated July 31, 1996, this case was set for trial at the trial session of the Court at San Francisco, California, beginning on October 21, 1996.

On October 8, 1996, respondent served upon petitioner a subpoena duces tecum, requiring petitioner to produce certain documents on October 21, 1996, at the call of the calendar of the trial session of the Court in San Francisco.  The subpoena duces tecum stated:

> The Petition filed in John Wadsworth v. Commissioner, Docket No. 3259-96, states that you, John Wadsworth, did not have any taxable income during the years 1989 through 1992.
>
> 1.  Please bring any and all documents that evidence receipt of nontaxable income (such as amounts derived from loans, gifts, bequests, inheritances, etc.) by you during the years 1989 through 1992.
>
> 2.  Please bring any and all documents that show the identity of the person who owns the property located at 2600 Valley Meadow Court, Oakview, California 93022 at which you reside (if you are leasing the property,

please bring copies of any rental agreement between you and the lessor).

At the call of the calendar in San Francisco, California, on October 21, 1996, at approximately 11:00 a.m., petitioner moved to quash respondent's subpoena duces tecum on the ground that "compliance therewith would interfere with his constitutional rights, specifically his rights under the Fifth Amendment." The Court informed the parties that the motion to quash would be reviewed during the noon recess and that the Court would rule on the motion late in the afternoon.

The case was recalled from the calendar at 4:20 p.m. on October 21, 1996, at which time the Court informed the parties that petitioner's motion to quash subpoena was denied. The Court further informed the parties that the Court would read into the record on the following day, October 22, 1996, at 3:00 p.m., the reasons for denying the motion to quash, and the Court did so.

The Court ruled:

The Fifth Amendment privilege against self-incrimination protects an individual from being compelled to disclose information that could reasonably be expected to furnish evidence needed to prosecute the claimant for a crime; Kastiger v. United States, 406 U.S. 441 at page 445, 1972.

It therefore, applies only when the possibility of self-incrimination is a real danger, not a remote and speculative possibility; Zicarelli v. The New Jersey State Commission of Investigation, 406 U.S. 472 at page 478, 1972.

The claimant must be faced with substantial hazards of incrimination from the information sought, and:

"The witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself.  His say - so does not of itself establish the hazard of incrimination.  It is for the Court to say whether this silence is justified."

Hoffman v. Commissioner, 341 U.S. 479 at page 486, 1951.  In determining whether there was a hazard of incrimination the Court first determined whether the information is incriminating in nature.  See United States v. Rylander, 460 U.S. 752, 1983.

We are satisfied that the information sought by the subpoena is not incriminating in nature, since it would consist only of a report of nontaxable income and the name of the owner of petitioner's residence.  There was no evidence in the record to indicate that respondent is currently conducting a criminal investigation of petitioner or has any intention of doing so in the future.

Petitioner's claim of privilege is based on sheer speculation as to what might happen if he produced the subpoenaed information.  As it was stated in Steinbrecher v. Commissioner, 712 F.2d 195, Court of Appeals 5, 1983, petitioner's asserted fear of incrimination is far more attenuated than the fear of prosecution dismissed by the Supreme Court in Zicarelli, supra.

Upon full consideration of the record before us, we deny petitioner's motion to quash subpoena duces tecum, which was filed October 21st, 1996.

The case was set for trial for Tuesday, October 29, 1996, at 2:00 p.m.

When this case was called for trial at 2:00 p.m. on October 29, 1996, counsel for respondent informed the Court that petitioner had not responded to respondent's subpoena duces tecum.  Respondent, therefore, did not have in hand the documents requested by her in her subpoena duces tecum.  Respondent then

orally moved to dismiss the case for failure to properly prosecute pursuant to Rule 123(b). The Court denied the motion.

Counsel for petitioner, David M. Kirsch, explained to the Court why petitioner, upon Mr. Kirsch's advice, refused to respond to respondent's subpoena duces tecum despite the Court's denial of petitioner's motion to quash. Mr. Kirsch stated:

> I am profoundly uncertain that Mr. Wadsworth can say anything at all, even for example, I don't have any documents without waiving his privilege. I just don't know what the state of the law is there."

The determinations of the Commissioner in her statutory notice of deficiency are presumed to be correct, and petitioner has the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). A taxpayer is required to maintain records that are sufficient to enable the Commissioner to determine his correct income tax liability. Sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

At trial, petitioner refused to proceed to carry his burden of proof, relying on his claimed rights under the Fifth Amendment.

Some courts have recognized a limited exception to this general rule where the Commissioner alleges that the taxpayer has unreported income. In some cases, the deficiency determination must be supported by some evidentiary foundation linking the taxpayer to the alleged illegal income producing activity. See

Petzoldt v. Commissioner, 92 T.C. 661, 688 (1989); Fitzpatrick v. Commissioner, T.C. Memo. 1997-158.  There is not in this record a scintilla of evidence that respondent ever considered a criminal investigation of petitioner for the years in issue.  As we have previously stated in Petzoldt v. Commissioner, supra at 684-685:

> A valid assertion of the privilege against self-incrimination, however, is not a "substitute for evidence that would assist in meeting a burden of production," for to adopt such a view "would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his."  United States v. Rylander, 460 U.S. 752, 758 (1983); see also Steinbrecher v. Commissioner, 712 F.2d 195, 198 (5th Cir. 1983), affg. a Memorandum Opinion of this Court. Cf. United States v. Green, 757 F.2d 116, 123 (7th Cir. 1985).  This is true with respect to a taxpayer's meeting his burden of proof with respect not only to respondent's determinations as to underlying deficiencies, Steinbrecher v. Commissioner, supra, but also to additions to tax under sections 6651(a)(1), 6653(a)(1), and 6653(a)(2).  Moore v. Commissioner, 722 F.2d 193, 196 (5th Cir. 1984), affg. a Memorandum Opinion of this Court.  [Fn. omitted.]

Petitioner has at all times during the administrative and litigation proceedings in this case refused to provide respondent with any of his records which would enable respondent to determine his income tax liability for the years in issue.

After petitioner informed the Court that he would not present any evidence, and rested, the Court instructed respondent to proceed with the presentation of her evidence.  Respondent called petitioner as her first witness.  Petitioner was sworn by the trial clerk and, as instructed by the trial clerk, stated his

name and address.  Counsel for respondent then proceeded to question petitioner:

Q  How old were you in 1989?

A  Fifth Amendment.

Q  Did you say Fifth Amendment?

A  Um-hmm.

The Court:  As to your age?

(Pause)

The Court:  Very well.  Next question.

Q  How long have you been living at the Oakview address, Mr. Wadsworth?  The 2600 Valley Meadow court, Oakview, California 93022.  How long have you been living at that address?

A  Fifth Amendment.

                    *    *    *    *    *    *    *

Q  Aren't you married, Mr. Wadsworth?

A  Fifth Amendment.

Q  Does your wife live with you at the Oakview address, Mr. Wadsworth?

A  Fifth Amendment.

The Court:  Let's shortcut this.  Ask the witness at this time if he is going to claim the Fifth Amendment regardless of the substance of the question asked.  Ask him that question.

Q  Mr. Wadsworth, are you going to claim the Fifth Amendment for each and every question that I ask of you regardless of what the subject matter of that question is?

A  Fifth Amendment.

The Court:  Any further questions?

Ms. Ravi:  No further questions, Your Honor.

The Court:  The witness will step down.


Respondent's next witness was Carolyn Stello (Ms. Stello). Ms. Stello is the owner of Collection Services (Services) and has worked at Services since 1985.  Services collects the interest due on notes and deeds of trust executed by buyers of property and distributes the income to the sellers (beneficiaries).

In December of 1987, petitioner became a client of Services. He has two accounts at Services on which he is an income beneficiary.

On July 1, 1986, petitioner and his wife, Charlotte N. Wadsworth (Charlotte), signed an exclusive authorization and right to sell agreement with Stello Real Estate, Inc. to sell property located in Los Angeles, California, in which they possessed an undivided interest.  The agreement provided, in part:

    2.  Terms of Sale:  The purchase price shall be sixty-
    four thousand and no/100 ($64,000), to be paid as
    follows ($16,000 total down payment (25%), buyer to

execute in favor of seller a first trust deed and note as his interest appears in the total amount of $48,000, payable $608.04 or more per month including 9% interest until paid.

By letter dated October 31, 1986, Stello Real Estate informed petitioner and Charlotte that a buyer for the property had been found and that the buyer's offer should be accepted. Petitioner and Charlotte authorized Stello Real Estate to sell their interest in the property by a note dated November 3, 1986. In that note, petitioner instructed Stello Real Estate to change its records to show that he and Charlotte would henceforth do business as C and C Liberty Enterprises (C and C). Petitioner informed Stello Real Estate that C and C's Federal I.D. number was 52-1370927. The property was sold, and this is one of the transactions from which Services collected interest income which it distributed to petitioner.

Ms. Stello testified that when Services first establishes an account for a client, Services sends a thank you note to the client and encloses an amortization schedule and a request for the client's Social Security number. Ms. Stello did not receive a Social Security number from petitioner.

In 1990, Ms. Stello sent a letter to petitioner informing him that she had sent him four requests for his Social Security number and had received no response to each of her letters. In response to her 1990 letter, Ms. Stello received a telephone call from petitioner during which he informed Ms. Stello that he would

not give her his Social Security number, the Government was infringing on his constitutional rights, and he does not have to pay Federal income taxes.

Ms. Stello further testified that during the years 1989 through 1992, Services mailed interest income checks to petitioner as a result of the accounts he maintained at Services and that those checks were mailed to petitioner's home at 2600 Valley Meadow Court, Oakview, California.[3]

The parties have also agreed that in 1991, petitioner received $11,000 as a distribution from the Estate of Alden J. Wadsworth and taxable income from the estate in the amount of $849.82. Furthermore, in 1991, petitioner received surrender proceeds from Connecticut Mutual Life Insurance Company, policy number 1965406, in the amount of $81.55. Petitioner had a gain from the policy of $903.68. In 1991, petitioner received surrender proceeds from Connecticut Mutual Life Insurance Company, policy number 2140790, in the amount of $56.79. Petitioner had a gain from this policy of $616.79.

Respondent then called as her third and last witness Revenue Agent George Christenot (Christenot) who received petitioner's audit file from the previous agent who was examining petitioner's tax years 1989 through 1992. After determining that petitioner refused to cooperate with respondent in the examination of the

---

[3] The record does not indicate the amounts of moneys mailed to petitioner during the years in issue by Services.

years in issue, Agent Christenot checked the Ventura County, California, court records, where petitioner lived, to identify any real estate or other property owned by petitioner and found nothing in those court records pertaining to petitioner.

The IRMF report is a report that is compiled by the IRS on all payment of mortgage interest. It is compiled in Michigan from Forms 1098, Mortgage Interest Statements, that are forwarded to IRS from financial institutions throughout the country. The Forms 1098 list all mortgage payments made throughout the country and that information is aggregated in one main computer program maintained by the IRS in the State of Michigan.

Agent Christenot was able to learn through the IRMF that petitioner had made mortgage interest payments for the years 1989 through 1992 in the amounts of $11,896, $11,288, $6,466, and $4,005, respectively. Respondent introduced into evidence at trial documentation showing that petitioner and Charlotte executed a deed of trust on May 12, 1975, in favor of Valley Federal Savings and Loan Association in which they pledged their home at 2600 Valley Meadow Court as security for a $65,000 promissory note.

Respondent then computed petitioner's taxable income on the basis of the BLS for the years in issue. The BLS represents estimates of petitioner's annual living expenses. The categories of family consumption include food, housing, transportation, clothing, personal care, medical care, and other consumables.

Agent Christenot substituted for the estimated housing expenses listed in the BLS the actual mortgage payments made by petitioner for the years in issue as determined from the above-mentioned IRMF regarding petitioner. A copy of those statistics was forwarded to petitioner with the statutory notice of deficiency.

Section 7602(a)(1) authorizes the Secretary to examine any books, papers, records, or other data which may be relevant for the purpose of ascertaining the correctness of any return. Where, as here, the taxpayer refuses to cooperate in the determination of his income, the Internal Revenue Service has great latitude in determining a taxpayer's tax liability. Giddio v. Commissioner, 54 T.C. 1530 (1970). Respondent may use one or more of several indirect methods to reconstruct a taxpayer's income. Sec. 446(b). One of the permitted methods, such as was used in this case, relies on the BLS data. See Giddio v. Commissioner, supra; Thomas v. Commissioner, T.C. Memo. 1996-492; Moll v. Commissioner, T.C. Memo. 1987-39; Denson v. Commissioner, T.C. Memo. 1982-360.

The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie, considered issues similar to the issues under discussion in this case in Edwards v. Commissioner, 680 F.2d 1268 (9th Cir. 1982). In Edwards, the taxpayers were the former owners of an auto repair business. Prior to 1971, they had filed Federal income tax returns. For the years 1971 through 1976, William Edwards filed "protest returns". On those

returns, he entered "Fifth Amendment" on most of the return entries which required information necessary to determine the taxpayer's tax liabilities.

On audit, the Commissioner determined that in each of the years in issue, the taxpayers had received unreported income from their auto repair business. Because the taxpayers refused to make available to the Internal Revenue Service auditor any information that would enable him to determine their income from that business for the years in issue, the auditor estimated their tax liabilities by adjusting the pertinent figures reported by them on their 1970 Federal income tax return in conformance with the percentage increase in the Consumer Price Index.

The taxpayers filed a petition with this Court. They refused, however, to produce at trial the books and records of their auto repair business that would enable the Court to determine their Federal income tax liabilities for the years in issue. This Court dismissed the case for failure to properly prosecute and the taxpayers appealed.

On appeal, the taxpayers argued, inter alia, that the Commissioner's use of the Consumer Price Index to determine their tax liabilities was arbitrary and that this Court's dismissal of their case for failure to properly prosecute violated their Fifth Amendment privilege against self-incrimination.

In rejecting the taxpayers' argument that the Commissioner's determination of their tax liabilities was arbitrary, the Court

of Appeals noted that the Commissioner's determination of deficiencies is presumptively correct once some substantive evidence is introduced showing that a taxpayer received unreported income.

The Court of Appeals also rejected the taxpayers' argument that this Court's dismissal of their case for failure to properly prosecute violated their Fifth Amendment privilege against self-incrimination. The Court noted in Edwards v. Commissioner, supra at 1270:

> To invoke the fifth amendment privilege, the taxpayer must be faced with substantial hazards of self-incrimination that are real and appreciable, and must have reasonable cause to apprehend such danger. United States v. Neff, 615 F.2d 1235, 1239 (9th Cir.), cert. denied, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). Appellants steadfastly assert that they have engaged in no criminal activity relating to their auto repair business, nor is any criminal investigation pending. Their fifth amendment claim merely rests on a generalized fear that if forced to turn over their business records, they somehow would be more likely to have criminal charges brought against them for tax evasion. Because there is no indication that production of their records would reveal criminal activity in their auto repair business and because the fifth amendment privilege may not itself be used as a method of evading payment of lawful taxes, United States v. Carlson, 617 F.2d 518, 523 (9th Cir.) cert. denied, 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed.2d 468 (1980), we reject appellants' fifth amendment claim as frivolous.

In this case, as in Edwards, the use of one or more of several indirect methods to reconstruct a taxpayer's income is permissible. Sec. 446(b). In particular, the use of BLS data has been approved by this Court. See Giddio v. Commissioner,

supra.

Furthermore, in this case, as in Edwards, respondent did not, in any manner, at the administrative or litigation phases of this case, suggest any criminal investigative activities pertaining to petitioner for the years in issue. We, therefore, hold that petitioner's Fifth Amendment claim may not be used as a method of avoiding income taxes due and owing for the years in issue. As Justice Holmes stated in United States v. Sullivan, 274 U.S. 259 (1927), in referring to the defendant in error at 264: "He could not draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law." Respondent has demonstrated, through the testimony of Ms. Stello, that taxable moneys were forwarded to petitioner through Services during the years in issue. Although respondent has proven the fact that petitioner received income during the years in issue, she was unable to prove the amount of such income. Respondent's inability to prove the amount of taxable income received by petitioner during the years in issue is directly attributable to petitioner's adamant refusal to communicate with respondent in her attempt to determine petitioner's income tax liabilities for the years in issue. We hold that respondent's determination of petitioner's Federal income tax liabilities for the years in issue must be sustained.

Respondent determined that petitioner's income for each of the years in issue is subject to self-employment tax under section 1401, and petitioner has not disputed this determination. We hold for respondent on this issue.

Respondent also determined that petitioner is liable for additions to tax for the years in issue under sections 6651(a) and 6654(a).

Section 6651(a)(1) imposes an addition to tax for failure to timely file a return, unless the taxpayer establishes: (1) The failure did not result from "willful neglect"; and (2) the failure was "due to reasonable cause". "Willful neglect" has been interpreted to mean a conscious, intentional failure, or reckless indifference. United States v. Boyle, 469 U.S. 241, 245-246 (1985). "Reasonable cause" requires the taxpayer to demonstrate that he exercised ordinary business care and prudence and was nonetheless unable to file a return within the prescribed time. Id. at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The addition to tax equals 5 percent of the tax required to be shown on the return for the first month, with an additional 5 percent for each additional month or fraction of a month during which the failure to file continues, not to exceed a maximum of 25 percent. Sec. 6651(a)(1).

Petitioner did not testify as to his failure to file Federal income tax returns for the years in issue. Based on the record we find petitioner intentionally failed to file his Federal

income tax returns for the years in issue and is liable for the addition to tax pursuant to section 6651(a)(1).

We next address the issue of the addition to tax for failure to pay estimated income tax under section 6654(a) for the years in issue.  This Court stated in <u>Estate of Ruben v. Commissioner</u>, 33 T.C. 1071, 1072 (1960):  "This section has no provision relating to reasonable cause and lack of willful neglect.  It is mandatory and extenuating circumstances are irrelevant."  Petitioner has failed to show that he did not underpay his estimated tax for the years in issue.  Accordingly respondent's determination is sustained.

Having fully reviewed the record in this case, we hold that respondent's determinations as set forth in the notice of deficiency must be sustained, except for the concessions by respondent, as previously noted.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.